**Edna M. WARD, Wife of and Robert L. Ward, Plaintiffs-Appellees,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.**

**No. 75–1241.**

United States Court of Appeals, Fifth Circuit.

Sept. 30, 1976.

Rehearing Denied Nov. 1, 1976.

Horace C. Lane, Baton Rouge, La., C. Gordon Johnson, Jr., New Orleans, La., for defendant-appellant.

John J. Cummings, III, Robert K. Tracy, New Orleans, La., for plaintiffs-appellees.

Before TUTTLE, AINSWORTH and CLARK, Circuit Judges.

AINSWORTH, Circuit Judge:

Plaintiffs, Mr. and Mrs. Robert L. Ward, brought this Louisiana diversity action against their insurer, State Farm Mutual Automobile Insurance Company, alleging that they were wrongfully damaged by the failure of defendant to settle within the policy limits ($10,000) certain claims against them growing out of an automobile accident.

On March 15, 1969 a car driven by plaintiff, Mrs. Ward, collided with the rear end of a vehicle which Mrs. Thelma Becnel was driving causing physical injuries which eventually were found to be extremely severe. A Louisiana State Court held that Mr. and Mrs. Ward were solidarily liable for Mrs. Becnel's injuries under applicable provisions of Louisiana law, and awarded Mrs. Becnel and her husband, Judge Morris Becnel, damages in the total amount of $521,-375. (*See Becnel v. Ward*, 286 So.2d 731 (La.App.1973).)

The present case was tried before a jury which awarded the Wards a verdict of $521,375 for the excess liability judgment previously rendered against them in Louisiana State Court; and also awarded additional damages for "any breach of duty on the part of the defendant State Farm Mu-

tual Insurance Company" (*i. e.*, for mental anguish, humiliation and embarrassment) of $450,000 to Mrs. Ward and $200,000 to Mr. Ward.[1]

We affirm the excess liability award of $521,375 with interest and costs, subject to a credit of $10,000 (all as provided in the judgment). However, we have concluded to certify to the Supreme Court of Louisiana the question of Louisiana law whether nonpecuniary damages may properly be awarded in addition to the amount of the excess state judgment. (*See* La.R.S. 13:72.-1; La.Sup.Court Rule XII.)

Thus we do not at this time decide appellant's third contention, that the damages assessed by the jury were punitive, and are not recoverable under the Louisiana rule forbidding an award of punitive damages.

The record discloses the following. The March 15, 1969 accident occurred in clear weather with good visibility. A car driven by Mrs. Ward, State Farm's insured, struck the rear of a car driven by Mrs. Becnel. The first State Farm representative to deal with the claim testified below that he con-

sidered the case one of absolute liability on the part of his company. The personal injury claim of a guest passenger in the Becnel car was settled by State Farm, as was the property damage subrogation claim of the Becnels' insurer. On March 18 Judge Becnel was visited by a State Farm representative; Judge Becnel testified that he offered to release State Farm and the Wards for $600 for Mrs. Becnel's apparent slight injury, plus $500 for depreciation to his car due to the accident, plus the unknown amount for rental of a replacement vehicle, plus the then unknown amount of Mrs. Becnel's medical expenses. The agent telephoned "some days later," Judge Becnel testified, rejecting the depreciation demand. A State Farm superintendent testified that because the car had not yet been repaired the amount of depreciation if any could not be determined. By mid-May Mrs. Becnel's medical expenses were $71, and the cost of rental of a replacement vehicle was $245. Judge Becnel telephoned a State Farm representative to renew his offer, now known to total $1,416. In mid-June the State Farm representative telephoned

---

1. Pertinent parts of the trial judge's charge to the jury in respect to nonpecuniary damages follow:

"Furthermore, if you find that the insurance company was in bad faith, either in refusing to settle within the policy limits or, in failing to adequately keep the Wards informed of compromise offers, then you must also consider the question of whether the Wards are entitled to any damages for injuries other than the excess judgment which may have resulted from these actions.

"Because, under the law of Louisiana, an insurance contract, like that of the Wards, includes not only the monetary protection to the limits of the policy, but also the security and peace of mind that one is safe from financial ruin.

"Under the law of Louisiana, the insurer, the insurance company, owes a special direct legal duty to its insureds to act in good faith in the handling of claims and upon a breach of this duty, the insureds may claim damages against its insurance company for damages above and beyond any excess judgment rendered against them.

"Putting it another way, this special direct legal duty owed by the insurance company to its insureds, requires the insurance company to act in good faith in handling claims.

"And if you find that this duty was breached from the facts of this case, and if you find that this breach of this duty was a direct cause of physical or mental damages to the insureds, then the insureds may seek recovery for these damages from their insurance company.

"Now, the Wards must do so, must do more than merely allege that they have sustained mental anguish, psychological injury in order to recover. In order to award damages for this, you must find a causal connection between the mental states of the parties and the alleged bad faith of the insurance company.

"Putting it more specifically, he must find that the damages they suffered by way of physical or mental injury was proximately caused by the breach or, the bad faith of the insurance company.

"And injury or damage is proximately caused by an act or failure to act whenever it appears from the evidence that the act or omission played a substantial part in bringing about or, actually causing the injury or damages and that the injury or damage was either a direct result or, a reasonably probable consequence of the act or omission." (Tr. pp. 650–52.)

Judge Becnel concerning possible settlement, and the Judge repeated the $1,416 offer. The State Farm representative noted in a later memorandum that on a date "near . . . June 13" he was unable to meet Judge Becnel's offer by only $200 to $300; he had authority to pay $900 for Mrs. Becnel's personal injury and $71.10 for medical expenses. State Farm's attorney testified that Judge Becnel never substantiated his depreciation claim in the usual manner, and for this reason State Farm did not authorize payment. State Farm representatives also testified that the Wards were not informed of Judge Becnel's early offers because company policy at that time was to notify the insured of offers only in cases which appeared to involve liability in excess of the policy limit; the Becnel claim did not appear to do so in June 1969. On July 3 Mrs. Becnel's condition began to deteriorate, and she entered the hospital.

In mid-July Judge Becnel retained an attorney, and on July 16 the attorney wrote to State Farm withdrawing all previous offers. On July 23 the Becnels' attorney met with a State Farm representative and advised him of Mrs. Becnel's poor condition. The Becnels' attorney testified that at the time of this meeting he did not know "how the doctors were relating the accident" to the present condition of Mrs. Becnel. On July 24 the State Farm representative advised his company that it was "inconceivable" that Mrs. Becnel's present condition could be related to the March 15 accident. On August 25 the Becnels' attorney wrote to State Farm again reporting on Mrs. Becnel's worsening condition. On October 1 the Becnels' attorney mailed to State Farm the first medical reports connecting Mrs. Becnel's condition with the March 15 accident. The Becnels' attorney testified that on October 2 he telephoned State Farm's attorney to make a "demand for payment and settlement" for $10,100. On October 14 he telephoned again to inquire concerning the October 2 demand and was told no action had been taken because State Farm was seeking authority to have a doctor of their own examine Mrs. Becnel. On October 20 the Becnels' attorney mailed a certified letter to State Farm's adjuster offering to settle for the maximum amount of the policy plus "the cost . . . incurred to date"; the Becnels' attorney viewed these amounts to be $10,000 for the personal injury, $995 property damage, and $100 "costs." This offer stated a deadline of ten days from the date of the letter.

On October 22 Judge Becnel filed suit against the Wards and State Farm in Louisiana State Court. On October 27 the Wards were served with process in connection with the lawsuit. They testified that this was their first notice that Mrs. Becnel's personal injury claim had not been settled. The State Farm claim superintendent was also notified of the lawsuit by receipt of suit documents from the Louisiana Secretary of State. In accordance with standard procedure when a petition was received he forwarded the claim file to State Farm's attorney for evaluation. Upon receiving the file State Farm's attorney wrote the Wards a letter, which they received October 31, advising them that in view of the lawsuit there was a possibility of liability beyond policy limits, and suggesting that they retain private counsel. On October 29 Judge Becnel's offer of October 20, with its ten-day deadline, reached the claim superintendent's office; he testified that it may not have come to his attention that day. The record does not explain the delay in forwarding the offer from the adjuster who originally received it. The superintendent testified that in any case by October 29 the claim was out of his hands and in those of the attorney; he forwarded the offer to the attorney. The State Farm attorney received it October 31, the day after the deadline. He testified that although the deadline had passed he felt that settlement was still available because in his experience such deadlines were flexible among attorneys. Also on October 31, the day after the deadline, the Becnels' attorney mailed to the State Farm claim superintendent authority to have Mrs. Becnel's medical records examined. The superintendent testified that he had requested permission to have Mrs. Becnel herself examined as well, but that this permission was never granted. The super-

intendent forwarded the October 31 authorization to State Farm's attorney, who had the rest of the file. The claim superintendent testified that the attorney eventually advised that additional medical information be waived in connection with efforts to settle the claim, and this was done. On November 12 the Wards visited State Farm's attorney, who again suggested that they retain counsel. He testified that he could not remember whether he mentioned to them the October 20 offer and deadline; the Wards, however, testified that he did not mention it.

On November 13 the Wards retained an attorney who thereupon asked them for authority to contribute to settlements in excess of the policy limit, and they authorized him to contribute up to $2,000. On November 14 State Farm's attorney responded to the October 20 offer. He telephoned the Becnels' attorney to say that he would be willing to recommend to State Farm acceptance of an offer of $10,000 for Mrs. Becnel's personal injury, plus $245 for loss of use of the Becnels' car, plus $100 in reimbursement of Judge Becnel's collision insurance deductible amount, plus "court costs" up to the date of the letter, plus such amounts for loss of clothing as could be "reasonably established." Specifically excluded were any interest on the $10,000 and Judge Becnel's demand for depreciation; State Farm still had no documentation of the latter on file. By letter of November 19 the Becnels' attorney replied to this proposal, withdrawing "all previous offers" and expressing "serious doubt" that his clients would now accept an offer of the nature of the October 20 offer—that is, one based on policy limits. The Becnels' attorney testified that as of October 31, the day after the expiration of the deadline, there was no chance that Judge Becnel would settle for the policy limit. On November 20 the Wards and their attorney met with State Farm's attorney and, according to his testimony, learned for the first time of any settlement offers, when the State Farm attorney mentioned the now-expired October 20 offer. The Wards testified that thereafter they were informed through their attorney of State Farm offers to the Becnels. Several days after this meeting State Farm's attorney informed the Wards' attorney by telephone that a contribution from the Wards of $600 or $700 might be required to pay settlement sums beyond the policy limit, and the Wards' attorney authorized the contribution. On November 21 State Farm's attorney telephoned the Becnels' attorney and on November 25 confirmed the call by letter, that he could recommend to State Farm payment of "all demands made by Judge Becnel," including the $10,000 policy limit with interest from the date of filing suit, plus loss of use of the vehicle, plus the deductible amount, plus the depreciation, plus such loss of clothing and personal effects as could be substantiated. On the same day State Farm's attorney wrote to State Farm suggesting that the policy limit be offered, along with "things which would not normally be payable under the policy" and reporting that the Wards had agreed to pay "the difference." He also wrote to the Wards' attorney reporting his proposal to the Becnels and confirming the Wards' agreement to pay the overage, which he wrote "would be the $500 depreciation . . . and the interest on the $10,000."

On November 28 Judge Becnel instructed his attorney to refuse the State Farm proposal of November 19. On December 2 State Farm granted its attorney authority by telephone to offer the policy limits. On December 9 State Farm by letter to the Becnels' attorney offered to settle for $10,000 with interest from the date of filing suit, plus $245 for loss of use of the vehicle, plus $100 for the deductible amount, plus $500 for Judge Becnel's claimed depreciation to his vehicle, plus as much personal property loss as could be "reasonably established," plus "court costs" to the date of the letter. This offer was rejected. It was periodically renewed, and rejected, up to the date of the trial.

State Farm appeals from the judgment below on three grounds: (1) that its actions did not show bad faith under Louisiana law; (2) that there is no basis in Louisiana law

for recovery of nonpecuniary damages in an insurance contract excess liability action; and (3) that the judgment below was so large as to be punitive in nature, in violation of Louisiana law forbidding punitive damages.

1. *Good Faith.*

█ Under Louisiana law an insurer may be liable for an excess judgment against its insured if it is found that the insurer's failure to settle within policy limits was arbitrary or in bad faith. *Roberie v. Southern Farm Bureau Cas. Ins. Co.*, 250 La. 105, 194 So.2d 713 (1969); *Cousins v. State Farm Mut. Auto. Ins. Co.*, 294 So.2d 272 (La.App.), writ refused, 296 So.2d 837 (La.1974); *Younger v. Lumbermens Mut. Cas. Co.*, 174 So.2d 672 (La.App.1965). Factors considered by the Louisiana courts in finding insurers to have acted in bad faith have included, for example, the likelihood of recovery by the claimant, *Trahan v. Central Mut. Ins. Co.*, 219 So.2d 187 (La.App. 1969); the likelihood of a judgment in excess of policy limits in view of the seriousness of the claimant's injuries, *id.*; and exposing the insured to a large liability when the insurance company's risk in litigating instead of settling was relatively small, *Wooten v. Central Mut. Ins. Co.*, 166 So.2d 747 (La.App.1964). *See* Comment, 30 La.L.Rev. 622, 630 (1970). Significantly, bad faith and consequent liability for a judgment in excess of policy limits have been found when the insurer failed to inform the insured of compromise offers, "in utter disregard of [the insured's] natural desire to protect himself from financial loss." *Roberie v. Southern Farm Bureau Cas. Inc. Co., supra*, 194 So.2d at 716; *see Cousins v. State Farm Mut. Auto. Ins. Co., supra.*

█ The jury here was properly instructed regarding the applicable Louisiana law above referred to. Thereafter the result hinged on the resolution of disputed facts by the jury. On the one hand the Wards contend that the evidence showed that there were at least two offers to settle within policy limits, and that no adequate

reason was advanced why one or the other should not have been accepted; and further, that the insureds were not kept informed of offers to settle and of their consequent continuing exposure to liability. On the other hand, State Farm points to disputes over items of recovery, the rapidly changing nature of the case due to Mrs. Becnel's deterioration, and the need for further medical reports as evidence that their early refusals to settle were reasonable and in good faith. State Farm contends that it could not reasonably be expected to settle for its policy limit before receiving the medical reports from the Becnels' attorney dated October 1, 1969, and that the Becnels refused to negotiate after October 30, 1969, so that the issue of bad faith must be limited to State Farm's treatment of the Becnel offer of October 20, 1969. A classic question for jury resolution of disputed facts was thus presented. The jury resolved these issues in favor of the Wards. There is substantial evidence supporting the jury's conclusion, and it is not our prerogative to disturb that conclusion. *Burrage v. Harrell*, 5 Cir., 1976, 537 F.2d 837. The trial judge therefore did not err in submitting the case to the jury and accepting its verdict. *See* Fed.R.Civ.P. 50 and 59; *American Fire & Cas. Co. v. Stewart-Sneed-Hewes, Inc.* 5 Cir., 1973, 478 F.2d 227. There was evidence of a quality and weight such that reasonable and fair-minded men might reach different conclusions, so that the trial judge correctly denied State Farm's motion for a directed verdict and for judgment notwithstanding the verdict. *See Boeing Co. v. Shipman*, 5 Cir., 1969, 411 F.2d 365, 374.

The judgment regarding excess liability of $521,375 is therefore AFFIRMED.

2. *The Award of Nonpecuniary Damages.*

█ We are in doubt about the controlling Louisiana law pertaining to the award of $450,000 to Mrs. Ward and $200,000 to Mr. Ward. This award raises unsettled questions of Louisiana law regarding the recoverability of nonpecuniary damages for breach of an insurance contract. These is-

sues are important and are particularly appropriate for determination by the Supreme Court of Louisiana, which is the ultimate authority on questions of state law in this diversity case, *see Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus we have concluded to certify [2] these questions to the Supreme Court of Louisiana for answer pursuant to La.R.S. 13:72.1, and La. Supreme Court Rule XII. Following our usual practice, *see H. S. Equities, Inc. v. Hartford Acc. & Indem. Co.,* 5 Cir., 1975, 512 F.2d 1277, counsel for the parties are directed to submit as soon as practicable, a proposed statement of the case and proposed certificate of issues for decision by the Supreme Court of Louisiana.[3]

The question of nonpecuniary damages for mental anguish, humiliation and embarrassment will be certified to the Supreme Court of Louisiana.

---

**2.** *Cf., e. g., Clay v. Sun Ins. Office, Ltd.,* 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960), on certification, Fla.1961, 133 So.2d 735, on receipt of answers to certification, 5 Cir., 1963, 319 F.2d 505, rev'd, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964); *Cincinnati Ins. Co. v. City of Talladega, Ala.,* 5 Cir., 1976, 529 F.2d 718; *Boyd v. Bowman,* 5 Cir., 1971, 443 F.2d 848, on certification, Fla.1971, 256 So.2d 1, on receipt of answers to certification, 5 Cir., 1972, 455 F.2d 927; *A. R. Moyer, Inc. v. Graham,* 5 Cir., 1971, 443 F.2d 434, on certification, Fla. 1973, 285 So.2d 397, on receipt of answers to certification, 5 Cir., 1974, 492 F.2d 797.

**3.** The proposed statement of pertinent facts and the questions to be certified to the Supreme Court of Louisiana are to be prepared jointly by counsel. To the extent that counsel cannot agree, separate and specific counterdrafts must be submitted for the parties; supporting memoranda may be submitted where necessary. Submissions amounting to mere repetition of the positions of the parties as previously briefed are not acceptable. The principal object of the procedure above is to crystallize the substantive issues of Louisiana law so that the Supreme Court of Louisiana can provide complete and responsive answers to all questions of state law. Care should be

used in delineating each question, as it may be the key to decision. The certificate should fairly, precisely but succinctly set forth the problem at issue so that on receipt of the answers of the Supreme Court of Louisiana we can dispose of the entire appeal.

In framing the questions to be certified counsel may determine that there are subsidiary questions deriving from the main point of contention—whether nonpecuniary damages are recoverable on the breach of a contract of automobile liability insurance. These questions should lead to a consideration of whether redress of a breach of the good faith duty to settle lies in the law of contract or of tort; or is contemplated by Louisiana Civil Code Article 1934; or is contemplated by any other theory of Louisiana law. Authorities consulted by this court in reaching its decision to certify this issue include, *e. g., Meador v. Toyota of Jefferson, Inc.,* 332 So.2d 433 (1976); *Bye v. American Income Life Ins. Co.,* 316 So.2d 164 (La. App.1975); *Cousins v. State Farm Mut. Auto. Ins. Co.,* 294 So.2d 272, 275 (La.App.1974); *Caswell v. Reserve Nat. Ins. Co.,* 272 So.2d 37 (La.App.1973); *Pendleton v. Aetna Life Ins. Co.,* E.D.La.1970, 320 F.Supp. 425, 431–32; Comment, 30 La.L.Rev. 622 (1970).