GARRISON, Judge.
This is an appeal from a judgment of the district court granted October 7, 1983 and providing as follows:
“Judgment is rendered in favor of Joseph A. Torlage, Jr. and against Samuel Williams and Carolina Casualty Insurance Company, in solido, in the sum of $84,863.00 with interest from judicial demand and the expert fee of Dr. Norris set at $200.00. Judgment is rendered in favor of Samuel Williams and against Joseph A. Torlage, Jr. in the sum of $2600.00, with interest from judicial demand. Out of the award in favor of Joseph Torlage, Jr., $5863.70 is due Charity Hospital as intervenor with interest from the date of Torlage’s reconventional demand. Except for the expert fee, each party is to bear his own costs.
The trial judge additionally provided excellent written reasons for judgment:
“The weight of the evidence establishes that the Williams truck had been parked mostly in the street, obstructing moving lanes of traffic, and without parking lights. Williams was therein negligent.
Since probably his vision was partially blinded by the lights of the approaching Curtis vehicle, I find Torlage guilty of 25% of the total fault in failing to see and avoid the truck.
The Cortney Company was free of negligence.
Torlage’s injury is serious, but most of the residual disability was due to his repeated early weight bearing against medical advice. His general damages will be assessed at $100,000.00 plus loss of income during his recuperation at $3787.00 (V12 X $6500.00), medical expenses totaling $5,863.70 and damage to his vehicle of $3500.00.
Williams’ damages totaled $10,403.58 and he will recover judgment for 25% of this amount.(l)
* * * * * *
(1) Unlike the Uniform Act, Louisiana’s comparative fault enactments are silent on the question of set-off. See 40 La.Law Rev, at 311. I do not believe, however, it was the intent of the Legislature to allow a liability carrier to absorb for its benefit the claim of its assured. The plaintiffs’ claims should not be subject to off-set.” [1]
From that judgment Williams’ insurer, Carolina Casualty Insurance Company, appeals.
On the night of January 4, 1981, Samuel Williams was driving an 18-wheel truck with a trailer. Williams was delivering a load of anchor chain to The Cortney Company at 2619 Tchoupitoulas Street in New Orleans. He was proceeding in an “uptown” or westward direction. The 2600 block of Tchoupitoulas Street is a two-way two-lane road divided only by a stripe.
Upon arriving at his destination, Mr. Williams parked the truck such that the right cab tires were on the curbing, but close to two-thirds of the vehicle remained in the roadway, blocking the street. Most of the testimony indicates that the vehicle lights were off.
Joseph A. Torlage was also driving in an “uptown” or westward direction on Tchoupitoulas Street. Meanwhile Robert and Julia Curtis were driving in a “downtown” or eastward direction on this two-lane street. Joseph Torlage was somewhat blinded by the headlights of the oncoming Curtis vehicle. He testified that he “looked up” and saw the 18 wheeler approximately five feet in front of him and blocking the roadway. He attempted to *683 swerve around the protruding back of the truck, striking the left rear portion of the truck, and spun 180 degrees in a clockwise direction. His vehicle was stopped by a collision with the Curtis vehicle.
On appeal Carolina seeks to have the judgment reversed or the damages declared excessive on the grounds that the accident was due solely to the negligence of Torlage.
In Car & General Insurance Corporation v. Cheshire, 159 F.2d 985 (5th Cir., 1947), the U.S. Fifth Circuit Court stated:
“The physical facts, when carefully considered in the light of the record evidence, unerringly point to the negligence of the appellant’s assured as the proximate cause of the accident. When the truck broke down in the hands of a wholly inexperienced driver, he was unable to back it to a place of safety, but left it resting on the highway with the tractor lights burning and the unlighted trailer blocking the other lane of the highway. The tractor being on its proper side of the road with its lights shining deceived approaching drivers who did not, and could not, observe the unlighted trailer until they were almost upon it. Leaving this large and deceptive obstruction on the highway without flares as required by law was, to say the least, the grossest kind of negligence and a violation of the highway laws of Louisiana. Act 286 of 1938, Sec. 3, Rule 15; Act 164 of 1936 as amended by Act 215 of 1942; Coffey v. Lalanne, La.App., 20 So.2d 614, 617. Appellant may not escape liability for its negligence by relying upon the general rule that drivers of automobiles must keep their vehicles under such control as to be able to bring them to a complete stop ‘within the distance in which headlights project.’ Goodwin v. Theriot, La. App., 165 So. 342, 344 [1936]; Harper v. Holmes, La.App. 189 So. 463 [1939]. The Louisiana courts have made it clear that the general rules regarding a driver’s duty to be able to stop within the distance of his lights and his obligation to reduce speed and stop if ‘blinded by lights of another car or by dust, smoke, etc.,’ are not hard and fast rules which will operate to defeat recovery in every case in which a motorist collides with a stationary object in the highway. In Louisiana motorists have the ‘right to presume and act upon presumption that the way is safe for ordinary travel, even at night. ’ This is particularly true where a deceptive obstruction has been negligently placed in his way. Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1 [1936]; Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253 [1917]. Cf. Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148, 149(6), 151 [1945]. In each case the particular facts and circumstances must be considered and, ‘in the final analysis, the facts of each case will determine the question of negligence.’ Herring v. Holicer Gas Co., La.App., 22 So.2d 868, 871 [1945]; Woodley & Collins v. Schusters’ Wholesale Produce Co., 170 La. 527, 128 So. 469 [1930].” (At 987-988) (emphasis added).
The trier of fact apparently concluded that Mr. Williams was primarily negligent in creating this “trap”. Barlow Brown, Vice-President of Cortney Company testified that there was adequate space in which Williams could have parked such that the truck would have been entirely out of the street. Additionally,' Mr. Williams could have had the lights on his vehicle turned on and used flares or street reflectors to provide a warning to motorists. The trier of fact was justified in his finding that Mr. Williams was primarily negligent. The trial judge further assessed 25% negligence against Mr. Torlage.
In Triangle Trucking Co. v. Alexander, 451 So.2d 638, 642 (App.3rd, 1984), the Third Circuit stated as follows:
“The competing and compounding acts of negligence of the parties resulted in the accident. Justice and equity mandate that fault cannot be placed upon any single party in this instance, since all were negligent to some varying degree. This case can best be resolved, as did the *684 trial court, by the apportionment of fault to the parties pursuant to LSA-C.C. art. 2323.
In Sampy v. Roy Young, Inc., 425 So.2d 284 (3rd Cir.1982), this court pretermitted the question of whether the assessment of percentages of fault is a legal or factual matter. We now hold that a trier’s findings, as to percentages of fault under LSA-C.C. art. 2323, is factual, just as findings of contributory negligence under the old law were factual. Varnado v. Continental Insurance Company, 446 So.2d 1343 (1st Cir.1983); Johnson, Comparative • Negligence and the Duty/Risk Analysis, 40 La.L.Rev. 319 (1980).”
We find no manifest error in either the findings of negligence or the assessment of percentages of fault on the part of the trier of fact. Canter v. Koehring Co., 283 So.2d 716 (La., 1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978).
Turning to the second issue raised, appellant argues that the $100,000.00 awarded as general damages is excessive. Appellant argues “... The case has a value for general damages in the range of $50,000 total”, but cites no caselaw supporting that figure. (Appellant’s Brief at 14).
Mr. Torlage suffered an open reduction of a fracture to the femoral head at the hip joint socket. Mr. Torlage underwent surgery during which two metal screws were inserted. He was hospitalized for seven weeks and underwent traction after the surgery. Although the surgical procedure was successful, while hospitalized, the surgical site became infected and he underwent a second operative procedure. Mr. Torlage was discharged on February 18th on crutches and with some open drainage of the surgical site.
Despite repeated medical advice to the contrary, Mr. Torlage walked with weight bearing upon the injured hip. Dr. Norris testified that premature weight-bearing upon a hip predisposed to collapse and deformity will result in a greater degree of deformity when it occurs. (Tr. p. 209, 213). Mr. Torlage’s femoral head did eventually collapse and is presently deformed. He also suffers from arthritis of the hip, but there is no testimony indicating if the arthritic changes were precipitated or aggravated by the premature weight-bearing.
The trial judge took Mr. Torlage’s premature weight-bearing into account when he made the general damage award, stating “Torlage’s injury is serious, but most of the residual disability was due to his repeated early weight bearing against medical advice. His general damages will be assessed at $100,000.00 ...” (Reasons for Judgment, above).
In Herndon v. Neal, 424 So.2d 1180 (App.1st, 1982) the First Circuit increased a $45,000.00 award to $100,000.00 for a ten year old girl who had an open reduction of the hip fracture treated by surgical implant of metal pins. Her period of hospitalization was three weeks shorter than Mr. Tor-lage and she also underwent a second operative procedure for removal of the pins.
In Pawlak v. Brown, 430 So.2d 1346 (App.3rd, 1983) the Third Circuit upheld an award of $200,000.00 in general damages. Plaintiff suffered a fractured left hip and underwent open reduction surgery. Like Mr. Torlage, plaintiff suffered a sclerotic condition of the bone.
The trial judge could have and apparently did consider awarding a greater amount. It is further apparent that the $100,000.00 awarded is a reduction of that greater amount based on Mr. Torlage’s “repeated early weight bearing.” An appellate court may not substitute its own opinion for that of the trial judge, but is limited to the question of whether a clear abuse of discretion has occurred. No clear abuse of discretion in the amount awarded has occurred.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.

. We agree with the trial judge's assessment of legislative intent relative to set-offs in this particular instance.
"... There are several types of situations calling for different results. For example: If both parties are able to pay from their own assets, set-off is appropriate. If both parties have full insurance coverage, set-off would confer its benefit on the insurance carriers rather than the parties and this seems inappropriate. If one party can pay and the other cannot, set-off protects the first party. If one party has insurance and the other has not and cannot pay, neither set-off nor the lack of set-off fully takes care of the problem." 40 La.L.R. 311.