INSURANCE COMPANY OF
NORTH AMERICA

v.

HOME INSURANCE COMPANY.

Civ. A. No. 85–0520.

United States District Court,
E.D. Louisiana.

Sept. 30, 1986.

Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, La., for plaintiff.

Nelson W. Wagar, III, Hailey, McNamara, Hall, Larmann & Papale, Metairie, La., for defendant.

## OPINION

CHARLES SCHWARTZ, Jr., District Judge.

This matter was submitted to the Court on memoranda, exhibits and deposition testimony. Having considered the submissions of the parties and the applicable law, the Court rules as follows. To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as Conclusions of Law; to the extent any of the Conclusions of Law stated below constitute Findings of Fact, they are so adopted.

### Introduction

This is a dispute between excess and primary underwriters, in which excess underwriters Insurance Company of North America ["INA"] claim that defendant primary underwriters Home Insurance Company negligently and in bad faith failed to settle the claims of one Perry Tassin arising from an automobile/motorcycle collision occurring on or about March 7, 1983. Specifically, Home and INA provided primary and excess automobile liability insurance coverage, respectively, concerning the operation of automobiles owned by Valve Actuators, Inc., when a covered vehicle driven by Jordan Harding collided with Mr. Tassin's motorcycle, seriously injuring him. INA alleges that Mr. Tassin's claim, including general and special damages, "was worth well in excess of $300,000." See Complaint, ¶ 9. Primary coverage had limits of $300,000, and the Tassin claim was ultimately settled for $450,000.

### Findings of Fact

It was stipulated that INA paid $150,000 of its coverage in settlement of Mr. Tassin's claims. The parties further stipulated that, generally, the occurrences alleged in INA's memorandum occurred on the dates stated therein, with the exception of when Home first made a bonafide offer to Mr. Tassin to settle his claims. Other pertinent dates are summarized in Appendix A to this Opinion, and the findings below are based upon both the stipulations and the

Court's review of the documents and testimony in evidence.

Accordingly, the Court finds that Mr. Tassin filed suit on April 13, 1983 against the parties' insured in the amount of $3 million[1] for the accident occurring on March 7, 1983. See Petition, exhibit 5. The petition alleged Mr. Tassin's injuries resulted from an intersectional collision between the Harding vehicle and the Tassin motorcycle and that Mr. Harding was negligent in failing to yield to traffic having the right-of-way, failing to stop at a stop sign, failing to keep a proper lookout and failing to keep his vehicle under control.

Home Insurance received notice of the suit on April 18, 1983, by letter from the insured dated April 15, 1983. On April 21, 1983, Deborah Dillon, the casualty claims supervisor for Home Insurance, referred the suit to Mr. Frank Achary for handling. In its acknowledgment of the notice, Home advised the assured to put its excess carrier on notice, due to the size of the ad damnum, and if necessary, retain an attorney to protect its uninsured interests. See letter of May 5, 1983 from Ms. Dillon to Valve Actuators.

The Court finds INA had knowledge of the claim by April 28, 1983, and that Arlene Troyer, claims representative for INA, contacted the primary carrier requesting access to their files and additional information. See letter of May 2, 1983 from Ms. Troyer to Mr. Klein for the Home; Troyer deposition, p. 18. Another letter dated July 15, 1983 from INA to the Home requests a status report, and by reply of August 3, 1983 "all pertinent file material" was forwarded to INA. This action is confirmed by a Home "Office Memorandum" dated August 3, 1983 reflecting "The excess carrier has placed us on notice and all pertinent information has been forwarded to them." Unfortunately, the Court was not provided with any documentation reflecting other communications between the parties and what was provided to INA. Conspicuously absent was a demand by INA that Home settle within policy limits at that time.[2]

Shortly over a month after suit was filed, discovery by interrogatories and requests for production was actively underway. On September 13, 1983, Mr. Tassin extended a settlement demand in the amount of $300,-000. See exhibit 8, letter dated September 13, 1983 from Mr. Tassin's attorney to Home Insurance. That letter states in pertinent part:

Like Paul Masson, I am sure you never settle a case before its time. However, I believe this is a case where an early settlement would facilitate Mr. Tassin's medical treatment and convalescence.... We feel that the interest [sic] of the parties would be served by the payment at this time, of your policy limits....

No time limitation for responding was indicated, nor did plaintiff's counsel indicate the settlement would be withdrawn at any time.

Surprisingly, there is no concrete evidence before this Court whether Home communicated this settlement offer to INA. In this regard, the deposition testimony reflects:

Q. [W]hat procedures were in place to ensure that the excess carrier was notified of the significant developments in the case?

A. They were to be copied by our legal department.

Q. Were they copied?

A. It appears they may not have been.

Dillon deposition, p. 64. This failure would tend to support a finding of negligence on Home's part in its handling of the Tassin

1. In the Court's experience, a demand in a petition is not in any way dispositive of the actual value of a claim.

2. By letter of January 19, 1984, by which time Tassin's settlement offer had already risen to $450,000, INA advised counsel for Home, "If this matter is not settled within the primary limits by January 30, I would like for you to notify me by phone." That appears to be the closest INA came to calling upon primary to surrender its limits, until February 7, 1984 when counsel ultimately retained to represent INA made proper demand by letter of that date that Home tender its limits.

claim. On the other side of the coin, INA's monitoring is reflected by the following equally equivocal testimony:

Q. How were you going to keep abreast of developments after you reviewed the file material? ...

A. Normally [the general procedure] was 30–day calendar or sometimes 60, depending on if there was anything that was going to be happening within 30 days or if we needed any type of report that's sometimes 30 or 60.

Troyer deposition, p. 27. If INA had adhered to even a 60 day calendar review or inquiry, it would have made inquiry 60 days after August 3, or by October, 1983. Thus, even assuming Home improperly and negligently failed to notify INA of the settlement offer, INA failed to act with reasonable prudence under the circumstances to keep itself advised or force an early settlement of the case.

On January 13, 1984, Mr. Tassin's settlement offer was increased from $300,000 to $450,000, see letter dated January 13, 1984, exhibit 9, at which amount the Tassin suit was ultimately amicably resolved. It is stipulated that Home never made an unconditional tender of its policy limits to INA, having merely offered that if INA pays $150,000, Home would pay $300,000. See Dillon deposition, pp. 61–62. INA accepted this offer.[3] These events do not of themselves reveal negligence or bad faith, but the Court also examined events in the interim between September 13, 1983 and January 13, 1984, to ascertain whether Home's handling of the case prior to withdrawal of the $300,000 settlement offer was unreasonable or in bad faith and whether Home's conduct on the whole was such that Home should bear this loss.

Generally, the Court finds reasonable the actions taken by Home's counsel, Mr. Achary. Plaintiff's deposition was taken September 29. Dr. Garner, Mr. Tassin's treating physician, dated October 11, 1983

(see Exhibit 12), and his deposition was taken November 22, 1983; the deposition of the insured driver, Mr. Harding, was taken on November 23, 1983. Further discovery continued after that date.

Other significant events immediately prior to withdrawal of the initial settlement offer include deposing another independent eye witness, Barbara Richardson, on November 10, 1983 and the retainer of an accident reconstruction expert for the purpose of developing a comparative negligence defense. See Dillon deposition, p. 82.

INA's submissions suggest that counsel for Home Insurance was not diligent in his defense of the case. The Court disagrees, in light of the deposition testimony and claims records showing the extent to which Home retained control of setting reserves and authorizing and negotiating settlement. For example, the claims department would go to the home office to discuss settlement authority in the case and reserve recommendations were not generally sought from counsel. See Dillon deposition, exhibit 1, p. 9.

The record demonstrates Home's awareness that the Tassin claim was substantial. Mr. Achary recommended settlement, stating, "[I]f plaintiff's attorney does not guarantee payment for the hospitalization and doctors' fees, we should, in order to prevent a very bad case from getting even worse." Home's representative further admitted that she was aware Mr. Tassin's condition was getting worse. She was also familiar with the "Hoffman device" being worn by Mr. Tassin at the time she received Dr. Seltzer's report describing it, and the Court finds she then had sufficient knowledge to anticipate the potential effect of the device being viewed by a jury at trial. Moreover, Ms. Dillon had recommended a reserve of $300,000 be carried for the case, although in fact Home carried a $250,000 reserve by November 23, 1983.

---

3. Home argues INA lacks a "right of action ab initio" due to INA's voluntarily contributing $150,000 to settlement. Ordinarily, this Court would look for a judgment to determine whether INA acted reasonably in paying $150,000 above primary limits. However, in view of Home's continued refusal to post primary limits even after it was clear they would be exhausted unless INA paid $150,000, the Court does not deem INA's contribution voluntary, and has evaluated this matter as if INA were forced to pay by judgment.

However, the record further reflects that at some point subsequent to November 7, 1983, Ms. Dillon discussed settlement with plaintiff's counsel in the amount of $150,000, which this Court finds was a substantial point of departure for informal negotiations under the circumstances. The Court does not find determinative that no authority for settlement was extended to Ms. Dillon, and the Court takes judicial cognizance that discussions of this nature, without authority, are a natural progression in settlement negotiations. See Dillon deposition, p. 41.[4]

Counsel for primary also testified that at no point in time did he feel the insured would be exonerated from liability, but that he wished to explore a defense of contributory negligence on the part of Mr. Tassin.[5] INA challenges the reasonableness of counsel's hope to develop a contributory negligence defense. However, the Court does not find counsel's actions unreasonable, particularly in view of the involvement of a motorcycle as the mode of transportation. A reasonable juror might well conclude that a motorcycle rider assumes some portion of the risks involved in an accident.[6]

The Court accepts the testimony of counsel for Mr. Tassin, Kenneth B. Krobert, that the offer was increased due several factors, including counsel's awareness of excess coverage "at some point in time" after the initial $300,000 demand was made; an increase in medical costs beyond expectations; additional pressure was thought necessary; and plaintiff had not received any response from Home, other than Ms. Dillon's tentative inquiry. None of these factors alone demonstrates negligence on Home's part, although INA was obviously not as "lucky" as it might have been had its coverage not been discovered. Another factor militating against a finding that fault on Home's part caused the loss is Mr. Krobert's testimony he intended to increase the demand once he heard the Doctor's testimony. The Court therefore finds that the settlement offer of $300,000 could have been withdrawn as early as November 22, after Dr. Garner's deposition, and Home was under no obligation to settle the case prior to deposing the doctor.

It is also clear from the evidence that counsel for the Home was confronted with an aggressive policyholder, who himself retained an attorney, in an attempt to minimize a judgment or settlement. See Achary deposition, pp. 17, 143–45; correspondence from Warren E. Kenney to John Roe dated May 4, 1983, Home exhibits 33, 34. INA did not demonstrate an equal fervor about its interests, and Mr. Achary cannot be blamed for attempting to balance the competing interests necessarily involved in the handling of a case such as this.

Nevertheless, Home's failure to keep INA informed of significant developments in settlement negotiation effectively precluded INA from making an early informed choice as to the course of action it would take. This omission constituted negligence on Home's part and was a cause in fact of INA's loss. However as indicated above, INA was also negligent in failing to exercise reasonable care to keep itself informed of developments which would have caused

---

4. Nor does any delay in conducting negotiations reflect negligence on Home's part. The Court is well aware that settlements are often negotiated on the eve of trial, at which time a recalcitrant defendant may save money due to a plaintiff's willingness to take money in hand, rather than gamble. Similarly, a plaintiff willing to wait may gain from the defendant's last minute concern over controlling its exposure. Home was under no obligation to leap into settlement rather than wait and attempt a better deal after further discovery.

5. There is conflicting testimony about whether any experts were retained to locate or investigate the motorcycle and determine, for example, whether it had a headlight burning at the time of the impact. See Achary deposition, exhibit 3, p. 30. The Police Report reflects that both vehicles had headlights burning, and that the motorcycle was taken to a wrecker yard. The Court does not find any failure to retain such experts shows negligence on Home's part.

6. A jury might also have had a problem with Mr. Tassin's credibility in view of his criminal record, assuming it were admitted into evidence.

INA to request Home to settle within primary limits prior to January 13, 1984. Thus, INA's negligence was also a cause of the loss. The Court finds Home's negligence contributed twenty-five per cent to the loss, with INA's negligence contributing the remaining seventy-five per cent.

### Conclusions of Law

This Court has jurisdiction over this matter by virtue of the Court's diversity jurisdiction.

Unquestionably, Home owed a duty to INA to act reasonably and in good faith, just as if there were no excess insurer. Thus, INA stands in the same position as the insured. "The insurer is bound to a competent defense of the insured, and is liable to the insured for any damages sustained as a result of the breach of that obligation." *Cousins v. State Farm Mut. Auto. Ins. Co.*, 294 So.2d 272, 275 (La.App. 1st Cir.), *cert. denied*, 296 So.2d 837 (La. 1974) (failure to communicate settlement offer not causally related to loss). This duty is sometimes evaluated in terms of "bad faith"; sometimes in terms of "negligence"; and sometimes the two concepts are blurred. *Younger v. Lumbermens Mut. Cas. Co.*, 174 So.2d 672, 674–75 (La. App. 3d Cir.), *cert. denied*, 247 La. 1086, 176 So.2d 145 (La.1965). *See also Offshore Logistics Servs. Inc. v. Arkwright-Boston Manuf. Mut. Ins. Co.*, 639 F.2d 1142, 1144 n. 3, *rehearing denied*, 647 F.2d 1121 (5th Cir.1981). A determination of what constitutes bad faith or negligence depends upon the facts and circumstances of each case. *See Cousins v. State Farm Mut. Auto. Ins. Co.*, supra, 294 So.2d at 275. *See also Ward v. State Farm Mut. Auto. Ins. Co.*, 539 F.2d 1044, 1049 (5th Cir.1976) [7]; *Roberie v. So. Farm Bureau Cas. Co.*, 250 La. 105, 194 So.2d 713, 716 (1967) (court finding bad faith, not reaching issue of negligence).

The Court perceives that Home was caught on the horns of a dilemma. Home was concerned about the seriousness of the case, but also was attempting to develop in good faith a comparative negligence defense confirmed by the deposition of the policyholder's driver. The Court finds persuasive authority cited by Home to the effect that an insured who steadfastly proclaims his own freedom of fault cannot complain if his insurer believes him and acts accordingly. *See Cousins v. State Farm Mut. Auto. Ins. Co.*, supra, 294 So.2d at 276–77. Similarly, if an insured's representations influence an insurer to refuse settlement, the insurer should not be charged with bad faith refusal to settle. *Cf. Williams v. Employers Mut. Liab. Ins. Co.*, 131 F.2d 601 (5th Cir.1942) (Alabama law).

Moreover, the impropriety of judging Home's actions by a litmus test is highlighted by the contradiction inherent in INA's position: While proclaiming the seriousness of the Tassin claim, a claim that would support a judgment in excess of $300,000, INA at the same time raises arguments implying the settlement is unreasonable. Further, if it were immediately apparent to Home that the case should be settled within policy limits, INA should have come to the same conclusion and made an earlier demand that the claim be settled within policy limits. At most, the facts in this case demonstrate that Home unfortunately delayed settling the case, in the mistaken hopes of negotiating a better deal. A mistake in judgment value (or, in this case, available settlement) should not of itself subject an insurer to liability beyond that of its policy limits. *See Davis v. Md. Cas. Co.*, 16 La.App. 253, 133 So. 769 (2d Cir.1931).

As stated in *Younger v. Lumbermens Mut. Cas. Co.*, supra:

> [S]omething more than mere error of judgment is necessary to constitute bad faith, and the insurer cannot be required to predict with exact certitude the result of a closely contested lawsuit.

174 So.2d at 678, *citing* 7A Appleman, *Insurance Law and Practice*, § 4712, pp. 565–67.

---

7. The Court in *Ward* invited the parties to apply for certification of issues implicating the question whether the action against the insurer sounds in contract or tort. *See* 539 F.2d at 1050 n. 3. Apparently, the case did not proceed to that point.

Under the circumstances, the Court cannot conclude that Home acted in bad faith. However, neither INA nor Home demonstrated exemplary claims management in this case. Home's apparent failure to communicate the Tassin settlement offer to INA certainly constitutes negligence, although INA was likewise guilty of negligence in its failure to monitor what it now argues was a dangerously large exposure. As these claims sound in negligence, the Court sees no reason why Louisiana principles of comparative negligence should not be applied, and Home is hereby ordered to pay twenty-five per cent of INA's loss or $37,500.

For the foregoing reasons, the Clerk of Court is hereby directed to enter judgment in favor of plaintiff in the amount of $37,500, with interest to run from date of judicial demand and each party to bear its own costs.

## APPENDIX A

| | |
|---|---|
| 03–07–83 | Date of Tassin/Harding vehicle accident. |
| 04–13–83 | Petition filed on behalf of Mr. Tassin. |
| 04–18–83 | Ms. Dillon action initiator; reserve $150,000.00. |
| 04–21–83 | Suit sent from claims to law office of Frank Achary. |
| 04–22–83 | Liability designated "on insured". |
| 04–26–83 | Insured complains "most unhappy with handling of claim". |
| 05–13–83 | Reserve increased to $150,000.00. |
| 05–26–83 | Answer, Request for Production and Interrogatories filed by Mr. Achary. |
| 06–26–83 | Motion to Compel by Mr. Achary filed. |
| 07–15–83 | INA requests information. |
| 08–03–83 | Ms. Anna Harris sends entire file to INA. |
| 08–23–83 | Tassin's attorney responds to Home's Interrogatories. |
| 09–01–83 | Notice of deposition of plaintiff. |
| 09–13–83 | Tassin's attorney offers to settle at $300,000.00 to Mr. Achary. |
| 09–15–83 | Deposition of Charity Hospital set. |
| 09–16–83 | Mr. Achary sends plaintiff's attorney's demand and Dr. Seltzer's 8–8–83 report to claims. |
| 09–29–83 | Deposition of Mr. Tassin. |
| 10–03–83 | Mr. Achary corresponds to insured, denies any intent to settle at present time. |
| 10–05–83 | Notice of deposition of Officer Berry. |
| 11–08–83 | Counsel for Mr. Tassin moves to set case for trial. |
| 11–08–83 | Deposition of Dr. Seltzer, Loving and Jennings (Charity) approved. |
| 11–10–83 | Deposition of Barbara Richardson. |

| | |
|---|---|
| 11–14–83 | Dillon counter-offer of $150,000.00 "dismissed abruptly" by plaintiff's attorney. |
| 11–16–83 | Home claims committee recommends $165,000.00 authority to NY to be offered after deposition of Dr. Seltzer on 12–15–83. |
| 11–17–83 | Received Dr. Onyx Garner's report from plaintiff. |
| 11–22–83 | Deposition of Dr. Garner. |
| 11–23–83 | Deposition of insured driver. |
| 11–23–83 | Notice deposition of Loving but cancelled. |
| 11–26–83 | Surgery on plaintiff. |
| 11–28–83 | Sochs advised Dillon reserve increased to $250,000.00; requests complete medicals. |
| 12–08–83 | Notice deposition of Loving, but cancelled. |
| 12–14–83 | Notice deposition of Officer Berry, but cancelled. |
| 12–15–83 | Notice deposition of Dr. Seltzer, but cancelled. |
| 01–05–84 | Deposition of Dr. Seltzer. |
| 01–05–84 | Notice deposition of Officer Berry, but cancelled. |
| 01–06–84 | Deposition of Loving. |
| 01–13–84 | Plaintiff increases offer to $450,000.00. |
| 01–11–84 | Frank Achary reports deposition of Dr. Seltzer. |
| 01–19–84 | INA's first contact with Home since 08–03–83 when entire file sent; medical information requested by James C. Guidos. |
| 01–25–84 | Dillon requests settlement authority of $250,000.00 from NY. |
| 01–25–84 | Mr. Achary sends all medicals to INA. |
| 02–03–84 | Complete medical specials of $64,000.00 and documents received from plaintiff's attorney. |
| 02–07–84 | INA demands $300,000.00 from Home; case settled at $450,000.00. |
| 02–15–84 | Trial date. |