**NATIONAL UNION FIRE INSURANCE OF PITTSBURGH, PENNSYLVANIA**

v.

**LIBERTY MUTUAL INSURANCE COMPANY.**

Civ. A. No. 86–2000.

United States District Court, E.D. Louisiana.

Aug. 31, 1988.

Arthur H. Leith, McGlinchey, Stafford, Mintz, Cellini, & Lang, New Orleans, La., for plaintiff.

W.K. Christovich, Christovich & Kearney, New Orleans, La., for Liberty Mut. Ins. Co.

## ORDER AND REASONS

MENTZ, District Judge.

This matter comes before the Court on cross-motions for partial summary judgment. Plaintiff, National Union Fire Insurance of Pittsburg, Pennsylvania (National Union), commenced this action to recover monies it paid in satisfaction of a judgment rendered in favor of Union Texas Petroleum Company (U–Tex) on a cross-claim for indemnity filed by U–Tex against Antill Pipeline (Antill) and Liberty Mutual Insurance Company (Liberty Mutual) in four consolidated lawsuits in the 32nd Judicial District Court for Terrebonne Parish. That litigation (referred to as the underlying litigation) was brought by the survivors of four Antill employees who were killed when a work barge owned by Antill exploded. The defendant in that lawsuit, U–Tex, named Antill and Liberty Mutual as third party defendants in a cross-claim for indemnity. U–Tex settled the main demand with the survivors of the employees for $1,035,000. U–Tex's cross-claim for indemnity was tried on February 22, 1983. In October of that year, a judgment adverse to Antill and Liberty was rendered by the trial court in the full amount of the settlement, $1,035,000, plus interest. The First Circuit affirmed and additionally awarded attorney's fees and costs to U–Tex. *Lirette v. Union Texas Petroleum Corp.*, 467 So.2d 29 (La.App. 1st Cir.1985).

Liberty Mutual provided two types of insurance to Antill in the underlying litigation. Liberty Mutual provided primary liability insurance in the amount of $500,000 as well as workmen's compensation insurance. While the state court litigation was pending, Liberty Mutual paid $88,000 in workmen's compensation benefits to Antill on behalf of the four wrongful death claimants. Liberty Mutual then intervened in the state court suit to recover the $88,000 and was awarded a judgment on its intervention in the amount of $88,000 plus interest from date of judicial demand.

Antill also had excess insurance with National Union in the amount of $1,000,000 above Liberty Mutual's limit of $500,000. The judgment against Antill in the amount of $1,035,000 plus interest was eventually paid by both Liberty Mutual and National Union. Liberty reduced the amount of its payment on the judgment in favor of U–Tex against Antill by the amount of the judgment on the intervention ($88,000 plus interest).

National Union alleges three claims in the case at bar. First, that Liberty Mutual acted in bad faith in failing to settle the third-party demand within Liberty Mutual policy limits; second, that Liberty Mutual wrongfully deducted the amount of the workmen's compensation judgment from their liability insurance policy limits, rather than from the amount of the contractual liability judgment; and third, that Liberty Mutual should be responsible for the entire attorney's fees and costs incurred by U–Tex in prosecuting the third party demand. The cross motions are directed only to the first two allegations.

FIRST ISSUE: Whether the primary carrier owes a duty to the excess carrier with regard to the handling, defense, and settlement of a claim of a mutual insured.

In support of its argument that the primary carrier owes no duty to the excess insurer, Liberty Mutual relies on *Police Officer and Mrs. John R. Laper v. Board of Commissioners of the Port of New Orleans*, 523 So.2d 926 (La.App. 4th Cir.1988), wherein the Court upheld the primary carrier's exception of no cause of action in a suit filed against the primary carrier by the excess carrier. The excess insurer in *Laper* claimed that the primary carrier had acted in bad faith in handling a liability claim against their mutual insured. The Court held that under Louisiana law the primary carrier owes no duty to the excess insurer in the defense or settlement of claims. The Court notes that the *Laper* decision is based on several cases, of which only one, *Petrol Industries v. Gearhart–Owen Industries, Inc.*, 424 So.2d 1059 (La. App. 2nd Cir.1982), precisely addressed the issue presented in *Laper:* Whether the primary carrier owes a duty to the excess carrier to act reasonably and in good faith in handling the defense of their mutual

insured. Judge Plotkin in his dissenting opinion in *Laper* noted that the Court in *Petrol* concluded in a "one-line, unsupported statement that '... [the primary] did not owe the excess insurer a duty to defend.'" *Laper* at 930. The majority in *Laper* also relied on the *Louisiana Civil Law Treatise: Insurance Law and Practice*, McKenzie & Johnson, Section 221, pp. 405–407, for the proposition that a primary carrier owes no duty to the excess carrier in the settlement of claims of a mutual insured. However, the case relied on in the treatise, *Futch v. Fidelity & Casualty Company*, 166 So.2d 274 (La.1964), simply held that a plaintiff may settle with the primary insurer and then proceed to trial against the excess carrier. In addition to *Laper*, Liberty Mutual relies on *Pacific Employers Insurance Company v. United General Insurance Company*, 664 F.Supp. 1022 (W.D.La.1987), which held that under Louisiana law a primary carrier owes no duty to the excess carrier regarding settlement.

On the other hand, National Union states that this Court is not bound by *Laper*. Under the *Erie* doctrine, where the State Supreme Court has not ruled on an issue, as in the case at bar, a federal court is not bound by decisions of intermediate Louisiana appellate courts if the court is reasonably certain that the state's highest court would not embrace the doctrine set forth in the appellate court's opinion. *Wood v. Armco, Inc.*, 814 F.2d 211, 213 n. 5 (5th Cir.1987).

National Union notes that Judge Schwartz of this District, in *Insurance Company of North America v. Home Insurance Company*, 644 F.Supp. 359, 363 (E.D.La.1986), held that under Louisiana law a primary insurer owes a duty to the excess insurer "to act reasonably and in good faith, just as if there were no excess insurer." Judge Schwarz's decision was followed by Judge Mitchell in *Bohn v. Sentry Insurance Company*, 681 F.Supp. 357 (E.D.La.1988). National Union also notes that this Court has ruled in an admiralty decision, *Utica Mutual Insurance Company v. Coastal Marine, Inc.*, 578 F.Supp. 1376 (E.D.La.1984), that the primary carri-

er owes the excess carrier a good faith duty regarding the settlement of their mutual insured's claim. Further, in *Southern American Insurance Company v. Hartford Accident & Indemnity Company*, 498 So.2d 280, 282 (La.App. 1st Cir.1986), the Court recognized that "whether the primary insurer owes any settlement duty to an excess has not been directly addressed by the Courts of [Louisiana]." The court declined to reach that issue because, even assuming such a duty, the facts of the case would not support a finding that the primary insurer was negligent. However, the Court cited with favor this Court's ruling in *Utica* and other cases which hold that the primary insurer owes a duty to the excess carrier.

■ It is this Court's opinion that the Louisiana Supreme Court would follow the rationale set forth in Judge Plotkin's dissenting opinion in *Laper*, and hold that under Louisiana law a primary carrier owes a duty to the excess carrier to act reasonably and in good faith in handling the defense of their mutual insured. *See also Home Insurance*, 644 F.Supp. at 363; *Bohn*, 681 F.Supp. 357; *cf. Utica*, 578 F.Supp. 1376. This rule of law discourages "misconduct, disregard, and misfeasance" and "promotes stability and positive economics." *Laper* at 931 (Plotkin, J., dissenting). Under this rule, the excess insurer "stands in the same position as the insured. The insurer is bound to a competent defense of the insured, and is liable to the insured for any damages sustained as a result of the breach of that obligation.'" *Home Insurance*, 644 F.Supp. at 363. The duty owed by a primary insurer under Louisiana law has been defined as "impos[ing] liability for an excess judgment against a primary insurer if that insurer failed to accept an actual offer to settle within its policy limits and such failure was negligent, arbitrary and/or in bad faith." *Commercial Union Insurance Company v. Mission Insurance Company*, 835 F.2d 587, 588 (5th Cir.1988). Further, a primary insurer's failure to communicate a settlement offer to the excess insurer constitutes negligence, as does the excess insurer's

failure to monitor the action. *Home Insurance,* 644 F.Supp. at 364.

SECOND ISSUE: Whether Liberty Mutual breached its duty to act reasonably and in good faith in handling the underlying litigation.

National Union urges this court to grant partial summary judgment in its favor because Liberty Mutual was negligent in failing to settle the underlying lawsuit for the amount offered by plaintiffs and in failing to communicate the offer of settlement to National Union.

The material facts pertaining to this issue which are not in dispute are as follows. By January 21, 1983, prior to the trial of the indemnity claim, Liberty Mutual had received a settlement demand from U–Tex in the amount of $250,000 and a waiver of the workmen's compensation intervention. Liberty Mutual responded with an offer to pay U–Tex $40,000 to settle the claim. This offer did not include a waiver of the workmen's compensation intervention. On February 22, 1983, the day of the trial, U–Tex reduced its settlement demand to $175,000 plus a waiver of the workmen's compensation intervention. Mr. Sundholm, the adjuster for Liberty Mutual, stated that he did not receive any indication up to the time judgment was rendered that U–Tex was withdrawing its $175,000 settlement offer. *See* Depo. of Mr. Sundholm, pp. 37–38. Mr. Sundholm also stated that if anyone from Liberty Mutual had communicated U–Tex's settlement demands, it would have come from him and that he does not recall informing National Union of either the $250,000 or the $175,000 settlement offers. *Id.* at 36–38. Mr. Sundholm stated that "the local opinion was that we had a good defense and that we would go ahead and try it and wait for the judgment." *Id.* at 38. However, Mr. Sundholm does not recall communicating that opinion to National Union. *Id.*

Likewise, Jeff Morgan, the adjustor for National Union, does not recall being informed of the settlement offers. *See* Depo. of Mr. Morgan, p. 79. Mr. Morgan stated that he "knows Liberty never told us about any settlement demands, either within their limits or within their negotiating authority. I think the first time we learned about those settlement demands was after commencement of this particular litigation." *Id.* National Union has lost its file on the underlying litigation and consequently has no records regarding that claim. However, National Union submits several letters between Mr. Morgan and Mr. Sundholm from July 15, 1982, prior to the trial of the indemnity claim until October 26, 1983, after judgment was rendered. All the letters inquire about the status of the litigation but none mention the settlement demands from U–Tex or National Union's responses thereto.

Liberty Mutual contends that there is a genuine dispute of material fact regarding whether Liberty Mutual was negligent in its decision not to settle and whether Liberty Mutual communicated the pre-judgment settlement offers to National Union. In support thereof, Liberty Mutual offers its file on this action, which reflects numerous communications from Liberty Mutual to National Union. Liberty Mutual states that the correspondence shows that not only was National Union kept fully apprised of the developments in this case up to the time of trial, but that on August 12, 1981 National Union was cautioned that "potential exposure is still great" and that excess was "more that welcome to contact Mr. Contois [the attorney for Antill]."

Whether Liberty Mutual was negligent and in bad faith in failing to settle the cross-claim is a factual question for the jury. However, National Union's motion for partial summary judgment declaring Liberty Mutual negligent in failing to communicate the pre-judgment settlement offers is a closer issue for the Court.

The settlement file submitted by Liberty Mutual does not reflect that any pre-judgment settlement offers were communicated to National Union. The file shows that Liberty Mutual had extensively documented its contact with National Union. Therefore, if a settlement offer was transmitted to National Union, it would seem likely that a copy of that communication would be in the file. Further, the

deposition of Mr. Sundholm shows that he does not remember informing National Union of the settlement offers. Liberty Mutual relies on the August 12, 1981 letter to National Union to show that National Union knew that the exposure was great. However, that letter was written one and one-half years before the trial of the cross-claim on February 22, 1983 and before the settlement offers were made. Based on the documents and the testimony, the Court finds that no written or oral settlement offer was communicated to National Union. A primary insurer's failure to communicate a settlement offer within the primary's limits constitutes negligence. *Home Insurance*, 644 F.Supp. at 362. Accordingly, the Court will grant summary judgment on this particular issue. This ruling leaves open the following issue for trial: whether Liberty Mutual was negligent or in bad faith in failing to settle the underlying litigation.

THIRD ISSUE: Whether Liberty Mutual acted improperly in deducting the amount of its compensation intervention judgment from its liability insurance policy limits.

National Union argues that Liberty Mutual's compensation judgment was extinguished by confusion under La.Civ.Code Art. 1903. That article provides that "[w]hen the qualities of the obligee and obligor are united in the same person, the obligation is extinguished by confusion." Here, National Union argues, that the obligation (the debt) is the compensation judgment owed to Liberty Mutual. That judgment is extinguished because Liberty Mutual provided two types of insurance coverage to Antill. It was liable for Antill's obligation to pay the representatives of the decedents workmen's compensation benefits. It was also liable to Antell by virtue of the terms and conditions of the liability insurance policy.

National Union claims that Liberty Mutual is seeking to obtain a windfall by virtue of the fortuitous event that Antill procured both workmen's compensation and liability insurance from Liberty Mutual. National Union states that if Antill had no compensation insurance in this case, the effect of the workmen's compensation intervention would have been to decrease the total amount of judgment rendered in favor of U–Tex against Antill. Since Liberty Mutual and National Union were held liable in solido for that judgment, Liberty Mutual would be receiving a windfall by deducting its compensation judgment from the $500,-000 it owes Antill under the liability policy. National Union also notes that under Liberty Mutual's theory, if the insured has workmen's compensation insurance with the same company that happens to be its liability carrier, the insured is worse off, because the confusion engendered serves only to reduce the amount of the insured's liability insurance coverage. National Union points to *Williams v. Cortney Company, Inc.*, 459 So.2d 681 (La.App. 4th Cir.1984) for the proposition that a union of the status of debtor and creditor created by confusion should inure to the benefit of the insured, not the insurer. Thus, the insurer cannot offset the two judgments from each other and be cast in judgment only for the difference.

Liberty Mutual relies on *Aetna Casualty & Surety Company v. Nichols*, 254 So.2d 161 (La.App. 2nd Cir.1971), which it asserts more directly on point. That action arose from an accident in which Claude Nichols sustained severe personal injuries. Because the accident occurred while Nichols was in the course and scope of his employment with the L.E. Meyers Company, Nichols was paid workmen's compensation benefits by his employer's insurer, Aetna, while the litigation was ongoing. The tortfeasor, Ms. Claudia Thompson, was also insured by Aetna. The trial court cast Aetna in judgment for the damages sustained by Nichols and held that the amount of damages paid by Aetna should be credited on the amount of workmen's compensation benefits paid by Aetna, inasmuch as the compensation exceeds the award of damages. Nichols appealed arguing that since Aetna was both a creditor and a debtor, its right was extinguished by confusion. The Court of Appeals affirmed the decision of the trial court and held that Aetna was entitled to credit *pro tanto* the

amount paid in compensation benefits from the amount paid in damages under Ms. Thompson's liability policy. The Court reasoned that since the Louisiana workmen's compensation statute provided that the employer's claim for compensation actually paid takes precedence over the claim of the injured employee or his dependent, Aetna, as the compensation carrier for the employer, L.E. Meyers Company, is unquestionably entitled to be reimbursed for compensation paid to Nichols out of any award of damages Nichols receives from Ms. Thompson.

Similarly, the Louisiana workmen's compensation statute in effect at present provides that the compensation carrier is entitled to a judgment ordering reimbursement for all compensation payments made to the employer on behalf of the employee. La.R.S. 23:1101; *see also Burley v. Louisiana Power & Light Co.*, 327 So.2d 585 (La.App. 4th Cir.1976), *writ denied*, 332 So.2d 278 (La.1976). Thus, as the workmen's compensation carrier, Liberty Mutual was entitled to be reimbursed for the monies paid to Antill on behalf of its employees or their survivors. The Court finds that Liberty Mutual properly offset the workmen's compensation judgment from the $500,000 which it was obligated to pay Antill under the liability insurance policy. *Williams v. Courtney Company, Inc.*, 459 So.2d at 681, upon which National Union relies, is distinguishable from the case at bar in that it did not involve reimbursement for a workmen's compensation judgment. The Court will follow *Nichols*, which relies on *Czaplicki v. S.S. The Hoegh Silvercloud*, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), for the proposition that any recovery of damages must first be paid to the compensation insurer as reimbursement for amounts paid in compensation.

Accordingly, this Court holds that Liberty Mutual owed a duty to the excess carrier, National Union, and that this duty was breached by Liberty Mutual's failure to inform National Union of the two offers of settlement. Furthermore, Liberty Mutual was entitled to offset the compensation benefits paid to Antill. This judgment was not extinguished by confusion. *See Nichols*, 254 So.2d 161. Therefore, both cross-motions for partial summary judgment are GRANTED IN PART and DENIED IN PART.