Craig BOHN

v.

SENTRY INSURANCE COMPANY, et al.

Civ. A. No. 80–836.

United States District Court, E.D. Louisiana.

Feb. 18, 1988.

Clayton G. Ramsey, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for cross claimant, Liberty Mut. Ins. Co. and Times Picayune Pub. Corp.

Stephen N. Elliott and Mickey S. deLaup, Bernard, Cassisa, Saporito & Elliott, Metairie, La., for cross defendant, Sentry Ins. Co.

## OPINION

MITCHELL, Senior District Judge.

This cause came on for non-jury trial before the Hon. Lansing L. Mitchell on

May 8, 1986, pursuant to 28 U.S.C. § 1332. The case arose out of an accident which occurred on November 4, 1979 when Craig Bohn, while riding a bicycle, was struck head-on by an automobile owned and operated by Brian Allee–Walsh, a *Times Picayune* sports writer. Allee–Walsh was insured by Sentry Insurance company (hereinafter "Sentry"). The Times Picayune was insured by Liberty Mutual Insurance Company (hereinafter "Liberty Mutual").

On August 18, 1981, Bohn accepted Sentry's $50,000 policy limits, releasing Sentry and Allee–Walsh, but reserving his rights against The Times Picayune. Bohn's case against The Times Picayune and Liberty Mutual went to trial on November 10, 1982 and resulted in a jury verdict for the plaintiff in the amount of $514,000, against which a credit of $50,000 was applied. During the appeal of this verdict, Liberty Mutual settled with Bohn for $485,000.

The instant trial arose out of a third-party complaint filed by The Times Picayune and Liberty Mutual against Sentry in November of 1981, which was based on: (1) Sentry's alleged bad faith failure to effect timely a settlement of plaintiff's claims on behalf of its insured, Brian Allee–Walsh, and the Times Picayune, which claimed to be an additional insured under the Sentry policy; (2) Sentry's alleged bad faith failure to advise The Times Picayune of settlement offers within the policy limits; and (3) Sentry's alleged arbitrary failure to provide The Times Picayune with a defense once Sentry settled plaintiff's claims against Brian Allee–Walsh.

To the extent any of the following findings of fact constitute conclusions of law, they shall be adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they shall be so adopted. Having considered the testimony at trial, the evidence, the memoranda of the parties and the applicable law, the Court rules as follows:

### FINDINGS OF FACT

#### 1.

Plaintiff alleged in his supplemental and amending complaint, naming The Times Picayune as an additional defendant, that at the time of the accident, Brian Allee–Walsh was an employee of The Times Picayune, was engaged in the course and scope of his employment, and his employer was therefore liable for his negligence.

#### 2.

Under the Sentry policy in effect at the time of the accident, which provided coverage for Brian Allee–Walsh in the amount of $50,000, additional insureds were defined as follows:

1.(a)(1) Persons Insured.

Any other person or organization but only with respect to his or its liabilities because of acts or omissions of an insured under Part 1(a) [named insured].

#### 3.

At least as early as June of 1980, Sentry was aware that Allee–Walsh had been in the course and scope of his employment at the time of the accident, rendering The Times Picayune liable for his negligence. The Times Picayune was therefore an additional insured under the Sentry policy. See Third Party Plaintiffs' Ex. 35, letter from Wanek to Sentry dated June 13, 1980. We acknowledge, however, that Sentry was put into somewhat of a peculiar position in this case. On the one hand, Sentry had Wanek informing it as early as June 1980 that Allee Walsh was in the course and scope of his employment, and that The Times Picayune was therefore an omnibus insured under the Sentry Policy. On the other hand, The Times Picayune, through Selman, was denying, and continued to deny up to the trial, that Allee–Walsh was in the course and scope of his employment at the time the accident occurred. If The Times Picayune was correct, then it would not be an additional, or omnibus, insured under the Sentry policy, because the policy would only provide coverage to The Times Picayune if it were liable for the acts of Allee–Walsh. Obviously, it would not be liable if he had not been in the course and scope of his employment. Nevertheless, based on the allega-

tions of the complaint, The Times Picayune was covered under the Sentry policy.

### 4.

The Times Picayune also was covered by Liberty Mutual with a one million dollar excess liability policy in effect at the time of the accident, this being over and above that provided to it by Allee–Walsh's personal policy with Sentry. From the time The Times Picayune was named as a defendant, attorney James Selman appeared as its counsel and thereafter actively participated in its defense.

### 5.

Sentry's attorney Michael Wanek knew in the early stages of litigation that the knee injury sustained by Bohn during the accident was serious, and that the injury had a value in excess of Sentry's policy limits. See Third–Party Plaintiffs' Ex. 32 and 39, letters from Wanek to Sentry dated April 21, 1980, and October 14, 1980. As early as May of 1980 Wanek was aware that plaintiff's counsel would be making a claim for Sentry's policy limits once settlement negotiations began. See Third–Party Plaintiffs' Ex. 33, letter from Wanek to Sentry. In October of 1980, Wanek received authority from Sentry to settle for its $50,000 policy limits. See Third Party Plaintiffs' Ex. 38, note from Sentry to Wanek.

### 6.

In July of 1980, Selman, counsel for both The Times Picayune and Liberty Mutual, knew that the case presented exposure in excess of Sentry's policy limits and indicated his intent to maintain an active role in the case. See Third Party Plaintiffs' Ex. 10, Selman's Memo to file.

### 7.

The Times Picayune and Liberty Mutual allege that an offer was made in November or December of 1980 by James Murrell, plaintiff's attorney, to Wanek to settle the entire case for $50,000 to $60,000, but that Wanek refused to offer more than $30,000 plus medicals, even though he had authority for the full $50,000. They also allege that Wanek failed to inform Selman of Murrell's offer. Liberty Mutual and The Times Picayune contend that Wanek's actions constituted bad faith on the part of Sentry, Wanek's principal.

### 8.

Sentry contends that although Wanek had settlement discussions with Murrell, the latter never made a definite offer to settle. We find, however, that in November of 1980 Murrell did make an offer to Wanek to settle the entire case for $60,000. In early December 1980, Murrell again made such an offer to Wanek, apparently saying that he would consider a "rock bottom" $50,000. See Third Party Plaintiffs' Ex. 41 and Third Party Defendant's Ex. 7, letters from Wanek to Sentry. We do not find determinative Bohn's statement in his deposition that he did not "authorize" Murrell to settle the entire case for that amount. Whether or not Bohn actually and fully authorized Murrell to settle, it is clear to this Court that settlement discussions were ongoing between Murrell and Bohn at that time, and that Bohn was at least considering settlement of the entire case for that amount.

### 9.

We are aware that discussions of this nature between counsel for defense and plaintiff take place frequently during the process of settlement negotiations, without absolute authority having been received by one or more of the negotiating parties. Whether or not Murrell had final authority, he nevertheless presented a definite demand to Wanek for $60,000. Wanek understood it to be such. Although Wanek had $50,000 authority, he informed Murrell that he had only $30,000, and offered Murrell that plus the provable medical expenses. However, Wanek did not inform Selman that Murrell made such a demand.

### 10.

From time to time during the summer and fall of 1980, Selman had discussions with Wanek regarding defense strategy. Selman told Wanek that he did not think Murrell could handle the pressure of trial due to some personal problems. In essence, Selman told Wanek that the case could be settled for less money the closer it

got to trial and could probably be settled within the policy limits. At that time, trial was scheduled for December 11, 1980. In a letter dated October 17, 1980, Selman requested that he be kept informed of settlement negotiations by Wanek. See Third Party Plaintiffs' Ex. 15.

### 11.

At the time Wanek informed Sentry of the $60,000 offer (See Third Party Plaintiffs' Ex. 41, letter dated November 24, 1980), a pre-trial conference had been held, and counsel were informed that the trial might have to be continued due to Court scheduling problems.

### 12.

Prior to the time that Murrell demanded $60,000 from Wanek, Selman had spoken with Murrell by telephone following Bohn's October 8, 1980 deposition. Murrell told Selman that Sentry's policy limits were "gone", and he wanted to know how much Selman would contribute towards settlement. In the same letter in which Selman requested to be informed of settlement negotiations (dated October 17, 1980), he informed Wanek of this discussion and that he had urged Murrell to get in touch with Wanek.[1] However, although Selman and Liberty Mutual had been aware since at least July of 1980 that the case presented exposure in excess of Sentry's policy limits (See Third Party Plaintiff's Ex. 10, Selman's Memo to file), they did not at that time demand that Sentry offer or attempt to settle within its policy limits.

### 13.

In February of 1981, Murrell, who was at Selman's law firm on another matter, ran into Selman and informed him that the whole case could have been settled within Sentry's policy limits in November or December, 1980. Selman immediately contacted Wanek and demanded that Wanek offer Sentry's policy limit of $50,000 to settle the case against all defendants.

### 14.

Wanek suggested to Selman that Sentry put up $45,000 and Liberty Mutual put up $5,000 to settle the case; however, Selman refused to contribute anything toward settlement until Sentry's policy limits had been exhausted. Wanek then offered Murrell Sentry's policy limits on March 17 or 18, 1981, but Murrell turned down the offer, since Bohn had decided to have additional surgery on his knee to be performed the following week.

### 15.

■ We do not find that Wanek's failure to immediately offer Murrell Sentry's full policy limits on demand constituted bad faith or negligence. On the contrary, Wanek's counteroffer was a reasonable initial offer under the circumstances. The Court is well aware that initially offering less than one's authority is more or less a standard tactic in ongoing settlement negotiations. We are not inclined to label such a tactic negligent or in bad faith. Neither do we find that Wanek's delay in getting back to Murrell with a higher offer, when Murrell either did not respond to or rejected Wanek's initial offer, amounted to bad faith or negligence. Waiting until a trial date draws near in the hope of getting a better deal is, from this Court's point of view, standard operating procedure. Had this case clearly been worth well in excess of the $50,000 policy limits, we might have reached a different conclusion. But at the time these discussions between Murrell and Wanek were going on, it does not appear that either Wanek or Selman valued the case in excess of $60,000. And, although they did recognize that the injury was serious, both seemed to believe that the entire case could be settled within policy limits. We do not find that the attorneys' evaluation of either the case or the settlement possibilities was unreasonable. Therefore, we we reiterate that we do not find Wanek's failure to immediately offer policy limits upon demand was negligent or in bad faith.

---

1. We note that in a report dated October 13, 1980 to Liberty Mutual, Selman informed Liberty Mutual that plaintiff's counsel had stated to Selman that he felt the case was worth more than Sentry's policy limits for settlement purposes. See Third Party Defendant's Ex. 14.

## 16.

■ Under the circumstances of this particular case, we do not find that Wanek's failure to inform Selman of the initial $60,000 settlement offer by Murrell constituted negligence or bad faith. As mentioned earlier, the Times Picayune and Liberty Mutual were actively represented by Selman from the time they were brought into the case.[2] Neither requested a defense from Sentry until July of 1981. Sentry was in the peculiar position of having its additional insured, the Times Picayune, deny its insured status by virtue of its contention that Allee–Walsh had not been in the course and scope of his employment when the accident occurred. Based on his personal knowledge of Murrell, Selman had advised Wanek that the case probably could be settled for a lesser amount the closer it got to trial, probably within Sentry's policy limits. Wanek knew by way of Selman's letter of October 17, 1980, that Selman had spoken to Murrell and Murrell had indicated to Selman that he would be seeking Sentry's $50,000 limits. Considering all of these circumstances, we do not find that Wanek acted negligently in failing to immediately inform Selman of the plaintiff's offer.

## 17.

Moreover, assuming that if Liberty Mutual had been informed of the plaintiff's offer it would have immediately demanded that Sentry offer its limits, what difference would Liberty Mutual's demand to settle have made on Sentry's duty to settle? We have already found that Sentry did not act negligently or in bad faith in refusing to offer its limits to plaintiff in November or December of 1980. Therefore, it did not breach its duty to its insured, the Times Picayune. Sentry did not owe Liberty Mutual, the Times Picayune's excess insurer, a greater duty than it owed its insured. If Sentry's actions were reasonable as to the Times Picyune, than they were reasonable as to Liberty Mutual.

**2.** Whereas the Times Picayune was added as a defendant in June of 1980, Liberty Mutual was not added until of June of 1981. But for the purposes of this opinion, we have treated Liber-

## CONCLUSIONS OF LAW

### 1.

■ It is unquestionable that Sentry owed a duty to The Times Picayune to act reasonably and in good faith. An insurer's obligation to its insured is determined with reference to the pleadings. If coverage, based on the allegations of the complaint, exists, an insurer is obligated to consider as paramount the insured's interests. *Moskau v. Insurance Co. of No. America*, 366 So.2d 1004 (La.App. 1st Cir.1978). Based on the allegations of the amended complaint, The Times Picayune was indeed an insured of Sentry. Sentry, therefore, was obligated to consider as paramount The Times Picayune's interest, as well as the interests of Allee–Walsh.

### 2.

■ We also find that Sentry owed a duty to Liberty Mutual to act reasonably and in good faith, "just as if there were no excess insurer." *Insurance Co. of North America v. Home Ins. Co.*, 644 F.Supp. 359, 363 (E.D.La.1986). Although we are aware of some authority to the contrary, [*See Pacific Employers Insurance Company v. United General Insurance Company*, 664 F.Supp. 1022 (W.D.La.1987)], we are convinced that the law set forth in *Insurance Co. of North America* is the better rule of law. *See Commercial Union Ins. Co. v. Mission Ins. Co.*, 835 F.2d 587, Fn. 1 (CA5–1988) (per curiam).

### 3.

■ As stated earlier, the Third Party Complaint is based in part on Sentry's alleged bad faith failure to effect a full settlement of plaintiff's claims. The test concerning whether or not an insurer acted in good or bad faith is whether the insurer exercised that degree of skill, judgment, and consideration for the welfare of the insured which it, as a skilled professional

ty Mutual as having been "brought into" the case at the same time as the Times Picayune, as its interests were at stake from that time forward.

defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit, may have been expected to utilize. *Younger v. Lumbermens Mut. Casualty Co.*, 174 So.2d 672, 675 (La.App. 3rd Cir. 1965).

**4.**

■ The determination of a bad faith or negligent failure to settle within the policy limits is made with reference to the following factors: (1) the probability of the insured's liability; (2) the extent of damages recoverable in excess of policy coverage; (3) the adequacy of the insurer's investigation of the claim; (4) rejection of offers in settlement; (5) the extent of the insured's exposure as compared to that of the insurer; and, (6) the non-disclosure of relevant factors by the insured or insurer. *Cousins v. State Farm Mut. Auto. Ins. Co.*, 294 So.2d 272 (La.App. 1st Cir.1974).

**5.**

(1) *Probability of Insured's Liability*

Allee–Walsh, Sentry's named insured, was clearly liable for the accident. The Times Picayune, therefore, as Allee–Walsh's employer, was also clearly liable for the accident, *if* Allee–Walsh was in the course and scope of his employment. Regardless of Liberty Mutual's stance on that issue, it is clear that Wanek believed Allee–Walsh had been in the course and scope of his employment and had so informed Sentry in the early stages of the case.

**6.**

(2) *Extent of Damage Recoverable in Excess of Policy Coverage*

On the surface, it is apparent that the extent of damages recovered in excess of the policy limits was quite extensive. The jury awarded the plaintiff $514,000. However, in November or December, 1980, when Wanek in effect rejected Murrell's offer to settle for $50,000 to $60,000, it was not at all clear that the case was worth a great deal more than the policy limits. There was no indication at that time that Bohn was considering a second operation, nor was there any indication at the time

that he was suffering emotional problems because of the accident.

**7.**

(3) *Adequacy of Insurer's Investigation of Claim:*

There has been no contention by any party that the insurer's investigation of the claim was inadequate. We find that Sentry conducted an adequate and prompt investigation of the claim.

**8.**

(4) *Rejection of Offers of Settlement*

Although Wanek stated he never actually had a definite offer of settlement from Murrell, we have found that he did have such an offer in November of 1980. Whether or not Murrell had actual authority from the plaintiff to settle the entire case, he nevertheless did make such a representation to Wanek. As noted earlier, however, we do not find that Wanek acted unreasonably or in bad faith in failing to immediately offer his policy limits.

**9.**

(5) *Extent of Insured's Exposure*

Again, based on the jury award it would appear at first glance that the insured's exposure as compared to that of the insurer, Sentry, was extensive. However, as stated above, it was not clear during November and December of 1980, when the settlement negotiations were ongoing, that The Times Picayune or Liberty Mutual had a great deal of exposure. As noted earlier, even Selman, who was actively representing The Times Picayune and Liberty Mutual, believed the case could be settled within or near Sentry's policy limits.

The insurer is bound to a competent defense of the insured, and is liable to the insured for any damages sustained as a result of the breach of that obligation." *Cousins v. State Farm Mut. Auto. Ins. Co.*, 294 So.2d 272, 275 (La. App. 1st Cir.), *cert. denied*, 296 So.2d 837 (La.1974). This duty is sometimes evaluated in terms of "bad faith"; sometimes in terms of "negligence"; and sometimes the two concepts are blurred. *Younger v. Lumbermens Mut. Cas. Co.*, 174 So.2d

672, 674–75 (La.App. 3d Cir.), *cert. denied,* 247 La. 1086, 176 So.2d 145 (La. 1965). *See also Offshore Logistics Servs. Inc. v. Arkwright–Boston Manuf. Mut. Ins. Co.,* 639 F.2d 1142, 1144 n. 3, *rehearing denied,* 647 F.2d 1121 (5th Cir.1981). A determination of what constitutes bad faith or negligence depends upon the facts and circumstances of each case. See *Cousins v. State Farm Mut. Auto. Ins. Co., supra,* 294 So.2d at 275. *See also Ward v. State Farm Mut. Auto. Ins. Co.,* 589 F.2d 1044, 1049 (5th Cir.1976) [7]; *Roberie v. So. Farm Bureau Cas. Co.,* 250 La. 105, 194 So.2d 713, 716 (1967).

*Ins. Co. of North America v. Home Ins. Co.,* 644 F.Supp 359, 363 (E.D.La.1986).

### 10.

We have already determined that under the particular circumstances of this case, Wanek's tactics in not immediately offering Murrell the full amount of his policy upon demand did not amount to a bad faith or negligent refusal to settle. As stated earlier, this type of negotiating (i.e., offering less than the authority actually given in the hope that the plaintiff will reduce his demand as the trial date draws near) is an example of common, everyday negotiations that go on during the pendency of legal proceedings. Although Wanek knew that the case was worth at least $50,000 and probably a little more at the time Murrell made the offer, based on the information that he had at that time about Bohn's condition, he was not unreasonably exposing his insured to an excess judgment by refusing to immediately offer his limits upon demand.

### 11.

■ In addition, contrary to Liberty Mutual's contention, we do not find that Wanek's attempt to obtain a $5,000 contribution from Liberty Mutual before Sentry's policy limits were offered in March of 1981 was in bad faith. There was no evidence that Wanek refused at any time to offer Sentry's policy limits *unless* Liberty Mutual contributed $5,000, nor was there any evidence that Wanek delayed offering the limits for any substantial period of time while attempting to coerce Liberty Mutual into putting up $5,000. We find that no settlement opportunity was lost because of Wanek's attempt to obtain this contribution from Liberty Mutual before offering the policy limits to Murrell.

### 12.

#### (6) *Non-disclosure Of Relevant Factors By The Insurer*

The Times Picayune and Liberty Mutual claim that Wanek failed to disclose his full settlement authority of $50,000. However, they point us to no particular rule of law setting forth such a duty, and we are unable to find any authority for the proposition that Wanek had a duty to disclose to them the full amount of his authority. They also contend that Wanek's failure to inform them of the settlement offer by plaintiff in November or December of 1980 constituted negligence or bad faith, relying for the most part on *Roberie v. Southern Farm Bureau Casualty Co.,* 250 La. 105, 194 So.2d 713 (1967). In *Roberie,* the Louisiana Supreme Court found that the insurer had breached its duty to the insured, in failing, *inter alia,* to inform him of settlement offers. But in that case, the insured was an individual person who was not represented by his own attorney and who had not been warned of his potential liability by the insurer. In the light of all these factors taken together, the Court found that the insurer had acted in bad faith. 194 So.2d at 716.[3]

### 13.

In *Younger v. Lumbermens Mutual Casualty Company,* 174 So.2d 672 (La.

---

**3.** A Louisiana appeals court in *Cousins v. State Farm Mutual Automobile Ins. Co.,* 294 So.2d 272, 276 (La.App. 1st Cir.1974) interpreted *Roberie* as holding that an insurer has an absolute duty to fully apprise the insured as to any offer of compromise. We do not read *Roberie* that strictly. In *Roberie,* the deciding factors appeared to be a combination of the insured's status as an individual person, with no independent counsel, who was not informed of his potential liability, along with not being informed of compromise offers. That case is clearly distinguishable from the case before us.

App. 3rd Cir.1965), the distinguished Judge Tate noted that the failure of the insurer to inform its insured of compromise offers does not by itself amount to bad faith or breach of duty; "it is just one of the several factors which might indicate an actionable breach of duty, with the duty greater in this regard the greater the probability of judgment exceeding policy limits, and with each of the several factors to be evaluated in the light of all the circumstances surrounding the rejection of the compromise offer." 174 So.2d at 679. We have already evaluated the circumstances surrounding Wanek's failure to inform Selman immediately of Murrell's offer and have found there was no bad faith or breach of duty. Furthermore, as discussed earlier, even if the offer had been communicated immediately to The Times Picayune and Liberty Mutual, and they had demanded that Sentry offer its limits, we do not believe Sentry would have had a duty to do so. "Indeed, even if the offer is communicated to the insured and the latter then desires its acceptance, the insurer is nevertheless not liable for an excess judgment if it rejects the compromise offer for valid cause and then is cast in judgment with its insured for an amount in excess of the compromise offer." *Younger*, 174 So.2d at 679, Fn. 2 (citation omitted).

14.

█ The final contention by The Times Picayune and Liberty Mutual is that Sentry arbitrarily failed to provide The Times Picayune with a defense once Sentry settled the plaintiff's claims against Allee–Walsh. In arguing that it had no duty to defend The Times Picayune once it paid the policy limits, Sentry relies on the following provision in its policy:

> We will pay for the cost of investigating the car accident and arranging for the settlement of any claim against you. We will also defend you, hire and pay a lawyer and pay all defense costs if you are sued by someone for damages because of a car accident—even if the accusations aren't true. However, we won't be obligated to pay for the cost of any further investigation or arrangement for settlement or to defend you further after

we pay our entire limit of liability for damages.

Sentry "Plain Talk Car Policy", p. 3. As far as we can determine, the enforceability of this type of provision has not been decided under Louisiana law. However, in 15 La.Civ.Law Treatise, § 213, Shelby McKenzie states that the exhaustion of policy limits by payment in good faith of judgments or settlements should relieve the insurer of further obligation to defend. We agree and find that Sentry had no further duty to defend The Times Picayune, as the settlement with Bohn was effected in good faith when it paid its policy limits.

15.

As to the claim for attorney's fees by The Times Picayune and Liberty Mutual, since we have concluded that there was no showing of bad faith, no attorney's fees will be allowed. *Trahan v. Central Mutual Insurance Co.*, 219 So.2d 187 (La.App. 3 Cir.1969).

In summary, we find that Sentry was not negligent, nor did it act in bad faith, in failing to effect a settlement of the entire case or in failing to communicate Murrel's offer to the Times Picayune and Liberty Mutual in November or December of 1980. As to the claim that Sentry arbitrarily failed to provide the Times Picayune with a defense once it settled the claim against Allee–Walsh, we find that under the particular circumstances of this case, Sentry owed no duty to defend the Times Picayune, once its policy limits had been exhausted by payment in good faith. Additionally, The Times Picayune and Liberty Mutual are not entitled to recover attorney's fees, as there was no bad faith on the part of Sentry.

For the foregoing reasons, judgment will be entered in favor of Sentry Insurance Company.

**JUDGMENT**

The Court having considered the pleadings, the evidence presented at trial, the memoranda submitted by counsel and the

applicable law, and having made Findings of Fact and Conclusions of Law;

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor Sentry Insurance Company, and against the Times Picayune and Liberty Mutual Insurance Company, each party to bear its own costs.