294 So.2d 272 (1974)
Beverly COUSINS and Mrs. Sandra Cousins Morgan
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.
No. 9789.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
Rehearing Denied May 30, 1974.
Writ Refused July 1, 1974.
Horace C. Lane, Baton Rouge, for appellants.
John D. Lambert, New Orleans, for appellee.
Before LANDRY, ELLIS and PICKETT, JJ.
LANDRY, Judge.
Defendant (Insurer) appeals a judgment in favor of its insureds, Mrs. Beverly Cousins and her daughter, Mrs. Sandra Cousins Morgan (Insureds), and their assignees, Mr. and Mrs. David Inabinet (Intervenors), for the amount of an excess judgment rendered in favor of Intervenors against Insureds in a tort action following Insurer's rejection of Intervenors' compromise offer within policy limits. The trial *273 court held Insurer liable upon finding Insurer in bad faith in failing to fully inform Insureds regarding the offer of settlement. Insureds and Intervenors have answered the appeal claiming attorneys' fees and damages denied below. We reverse and render judgment for Insurer.
This action is a sequel to Inabinet v. State Farm Mutual Automobile Insurance Company, et al., La.App., 234 So.2d 827, wherein Intervenors filed suit against Insurer and Insureds for damages sustained in an automobile accident involving a vehicle being driven by Mrs. Inabinet and a car owned by Mrs. Cousins and being driven by Mrs. Morgan, The Cousins vehicle was insured by State Farm in limits of $10,000.00$20,000.00.
At the time of the accident, Mrs. Inabinet was proceeding easterly on Main Street in the unincorporated town of Lacombe, St. Tammany Parish. Mrs. Morgan was also proceeding easterly along Main Street approximately four to five car lengths behind Mrs. Inabinet, who was proceeding to her residence on the South side of the street. The Inabinet residence was directly across from the post office. The Inabinet car was struck after its driver had partially completed her right turn into the driveway. At the moment of impact, only the rear portion of the Inabinet car was on the traveled portion of the roadway.
Mrs. Inabinet's version of the accident was that she began reducing her speed to 15 or 20 miles per hour as she approached her driveway, and continued doing so until she reached the point where she intended to turn. When about 20 feet from her driveway, she looked in her rear view mirror, detected no traffic behind her and made her turn. Her vehicle was struck when all of its wheels were off of the street with only the rear three feet of the car extending onto the street. She acknowledged she did not give either a hand or mechanical signal of her intent to turn because she saw no traffic to her rear. She estimated her speed at five to eight miles per hour when she began her turn.
Mrs. Morgan explained that as the Inabinet car approached the driveway, Mrs. Inabinet drove over the centerline of the street as if to drive to the post office on the left. Instead, Mrs. Inabinet veered suddenly and sharply to the right into the driveway. She also stated she was about 20 feet to the rear of the Inabinet vehicle when it made its sudden maneuver, and there was nothing she could do to avoid the collision.
John Dupuy, a disinterested witness, was proceeding easterly along Main Street behind Mrs. Morgan after having stopped at a service station situated on a corner two or three blocks west of the scene of the collision. He stated he had to wait at the station to permit Mrs. Morgan to pass. He noted that Mrs. Morgan was going about 40 miles per hour after she passed the service station. He continued to observe Mrs. Morgan's car and saw that when Mrs. Morgan was about 75 feet from the driveway, the Inabinet car was in the driveway with just its rear portion extending over the street. He also noted that when Mrs. Morgan was about 20 feet from the Inabinet car, Mrs. Morgan applied her brakes.
Initial investigation by State Farm indicated an absence of liability on the part of Mrs. Morgan, and only slight damages suffered by the Inabinets, namely, approximately $100.00 to their vehicle. It later developed that Mrs. Inabinet sustained serious injuries to her neck which condition required several operations. Although State Farm and counsel for the Inabinets realized that Mrs. Inabinet's injuries would, if recovered, exceed policy limits, a settlement within policy coverage could not be reached prior to trial on the merits. The Inabinets demanded $9,000.00 as a compromise figure; State Farm offered a maximum of $7,500.00. Confident that the matter could be successfully defended on the merits, State Farm defended itself and *274 its insureds. During the course of the trial, it became evident to the trial judge that if plaintiffs recovered, judgment would considerably exceed policy limits. A recess was called by the trial court during which the court apprised counsel for all parties that if the Inabinets prevailed, judgment would be substantially in excess of the insurance coverage. A settlement offer of $10,000.00 was declined by State Farm and trial resumed. Judgment was rendered in favor of the Inabinets in the sum of $27,072.57, and affirmed on appeal to this court. See Inabinet v. State Farm Mutual Automobile Insurance Company, 234 So.2d 827. Writs were denied by the Supreme Court and the judgment became final.
Insureds filed this action against State Farm for recovery of the excess judgment rendered against them. It is conceded that the defense rendered was competent. Insurer's alleged liability is predicated upon reputed negligence and/or bad faith in: (1) Failing to compromise notwithstanding liability was highly probable, and the evidence at trial indicated liability was clear; (2) failing to fully inform Insureds of the legal ramifications of the case, and the imminent possibility of the Insureds' exposure to personal liability; (3) failing to settle within policy coverage where it was evident that judgment would probably exceed insurance limits because of the nature of Mrs. Inabinet's injuries; (4) failure to fully disclose and explain to Insureds the circumstances of the compromise offers, and the possibility of the Insureds' exposure to excess judgment resulting from Insurer's rejection of all compromise offers.
Prior to trial on the merits, the Insureds assigned and conveyed to Intervenors all of Insureds' rights against Insurer, in consideration of Intervenors' release of Insureds from liability under the excess judgment. Intervenors then joined in this action as plaintiffs. Insurer responded with exceptions of no right and cause of action which assert: (1) That Insureds have no interest in the suit having assigned their rights, and (2) that Intervenors are without interest because their alleged acquisition was null as a prohibited sale of litigious rights, and alternatively, invalid for lack of consideration. All exceptions were referred to the merits by the trial court and ultimately overruled after judgment was rendered in favor of Insureds and Intervenors, said judgment recognizing that Intervenors had succeeded to all of Insureds' rights by virtue of the transfer and assignment.
The trial court found that the attorney for Insurer owed Insureds the duty of due care in defense of the action, including the obligation to keep the Insureds fully informed as to all developments in the case. The court also found that Insureds were somewhat less informed than Insurer, and therein Insurer breached its duty to insureds. The court concluded that whereas Insureds were informed as to the possibility of an excess judgment against them, Insureds were misled by the repeated assurance of counsel that there was no liability on the part of the Insureds. The trial court further found that the false confidence instilled by counsel's failure to fully disclose settlement offers and other relevant details caused Insureds to strenuously oppose all offers of compromise which Insureds were not in a position to fully evaluate.
Although Insurer urges its exceptions before this Court, we pretermit all consideration thereof in view of our finding that Insurer is not liable on the merits.
Insurer's obligation to defend is contained in the following policy language:
"... and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."
*275 The policy also establishes reciprocal rights and duties of the Insureds as follows:
"The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, property damage or loss with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident."
Our own jurisprudence accords with the majority view that the insurer is the champion of its insured's interests; that the interests of the insured are paramount to those of the insurer, and that the insurer may not gamble with the funds and resources of its policyholders. Younger v. Lumbermen's Mutual Casualty Company, La.App., 174 So.2d 672, and authorities therein cited.
An insurer is bound to a competent defense of its insured, and is liable to the insured for any damages sustained as a result of the breach of that obligation. Younger, above.
As regards compromise, our jurisprudence is to the effect that an insurer is not required to settle a claim within policy limits under penalty of absolute liability for any excess judgment rendered against the insured. Nevertheless, an insurer may be liable for an excess judgment against its insured where the insurer's refusal to settle within policy limits is found to be arbitrary or in bad faith. New Orleans & C. R. Co. v. Maryland Casualty Co., 114 La. 153, 38 So. 89; Davis v. Maryland Casualty Co., 16 La.App. 253, 133 So. 769; Tate v. Norfolk and Dedham Mutual Fire Ins. Co., La.App., 153 So.2d 495; Stewart v. Wood, La.App., 153 So.2d 497; Younger, above.
It appears that, in determining liability of an insurer to its insured for either an inadequate defense or refusal to accept a compromise offer, the courts are divided on the issue of whether liability is predicated upon negligence or breach of good faith owed the insured. Although the terms "negligence" and "good faith" are frequently used as either disjunctive or alternative tests, virtually all authorities consider the following factors in determining liability of the insurer for either failure to defend or failure to compromise: (1) The probability of the insured's liability; (2) the adequacy of the insurer's investigation of the claim; (3) the extent of damages recoverable in excess of policy coverage; (4) rejection of offers in settlement after trial; (5) the extent of the insured's exposure as compared to that of the insurer, and (6) the nondisclosure of relevant factors by the insured or insurer. For a more detailed discussion, see Annotation, "duty of liability insurer to settle or compromise", 40 A.L.R.2d 168, as treated in Younger, above. See also, "Duty of Insurer to Settle", 30 La.Law Review 622.
Younger, above, defined the obligation of the insurer toward the insured, and the test to be applied in determining liability of the insurer, in the following language which we approvingly cite:
"The insurer, as a professional defender of lawsuits, is held to a standard higher than that of an unskilled practitioner. What might be ignorance in his instance may be unforgivable oversight of the insurer; what might be neglect in his instance could well constitute bad faith on the part of the insurer. The question is always: `Did the insurer exercise that degree of skill, judgment, and consideration for the welfare of the insured which *276 it, as a skilled professional defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit may have been expected to utilize?' If it did, there is no problem; it is not liable. If it did not, then a court could easily describe its conduct as being negligent, or as not in accordance with the high duty of good faith which it owed to its insured."
Subsequent to Younger, above, our Supreme Court, in Roberie v. Southern Farm Bureau Casualty Insurance Co., 250 La. 105, 194 So.2d 713, imposed on the insurer the duty to fully inform its insured of compromise offers in addition to the insurer's obligations to adequately defend and refrain from arbitrary rejection of compromise offers. In Roberie, the insurer rejected an offer made on date of trial to compromise at a sum in excess of policy limits. The insurer completely ignored the insured by not even mentioning the offer, and proceeded to trial. The trial court found the insurer liable to its insured. On appeal, this court affirmed. See Roberie v. Southern Farm Bureau Casualty Insurance Co., La.App., 185 So.2d 619, holding the insurer liable on the negligence theory. The Supreme Court affirmed the insurer's liability in Roberie, notwithstanding it expressly found the insurer had adequately defended the claim, and had not acted arbitrarily in rejecting the tended compromise. In so holding, the Supreme Court concluded the insurer was in bad faith in not fully and completely apprising the insured as to the offer of compromise. Such action was held to subject the insurer to liability notwithstanding the lack of proof of any affirmative scheme or design on the part of the insurer to cause its insured financial loss.
Insureds and Intervenors do not contend that Insurer failed to adequately defend the action. They do maintain that Insurer's failure to compromise was arbitrary and unreasonable. They also contend that Insureds were not kept adequately informed of compromise offers; that certain written communications furnished Insurer by counsel were not made available to Insureds, and that Insureds were not fully and completely advised concerning the legal ramifications of the case, and the high probability of their exposure to considerable personal liability attending rejection of the compromise offers. In particular, it is suggested that Insurer was in bad faith in not making available to Insureds copies of letters from counsel to Insurer in which counsel evaluated the percentage possibilities of winning and losing the litigation. According to Insureds and Intervenors, these failures deprived Insureds of the opportunity to make an intelligent and informed decision in the matter.
The trial court found that the Insureds were in fact informed of the compromise offers, but held Insurer liable under the rule announced in Roberie, which requires a full and complete disclosure by the Insurer. In substance, the trial court held that, while Insureds were kept informed, they were not so fully and completely informed that they thoroughly understood their legal position.
According to counsel for Insurer, both Mrs. Morgan and Mrs. Cousins were kept fully informed as to all aspects of the case. He held innumerable conferences with them at which he discussed the question of probable liability as well as quantum. At first, counsel thought quantum would be light because of Mrs. Inabinet's apparent slight injuries. He always considered the defense had a strong case on liability in that, even if Mrs. Morgan were held guilty of negligence, Mrs. Inabinet's claim would be barred because of contributory negligence. When it developed that Mrs. Inabinet was more seriously injured than originally thought, the Insured raised its compromise offers to its eventual high of $7,500.00. Both Mrs. Morgan and Mrs. Cousins were informed as to the possibility of an excess judgment against them in the event of an adverse judgment. At all times, *277 Mrs. Morgan and Mrs. Cousins took the position that Mrs. Morgan was not at fault; That they did not wish to see the Inabinets recover one cent; that they did not want the matter compromised, and that they were both in fact "judgment proof", and that a judgment against them would be worthless. When the $10,000.00 compromise offer was made during trial, Mrs. Morgan and Mrs. Cousins were called into conference, and a full explanation given of their position. They again rejected the concept of compromise.
Huey Littleton, called by Insurer, testified that he was present on two occasions when counsel for Insurer discussed the case with Mrs. Morgan and Mrs. Cousins. He stated that the first occasion was at a store in Lacombe, Louisiana. According to Littleton, counsel at this time advised Mrs. Morgan and Mrs. Cousins of the possibility of an excess judgment being rendered in the matter. The second occasion was at the conference held between counsel and these parties during the recess called at the trial after the trial court recommended a settlement. He also stated that at this time Mrs. Morgan and Mrs. Cousins were fully informed by counsel regarding the various aspects of the case, and both insisted that the compromise offer be rejected and the trial proceed.
Mrs. Morgan concedes numerous conferences were held with counsel for Insurer during the protracted pendency of the action. She further concedes she steadfastly denied fault in causing the accident, but she could not recall the counsel ever advised her that Mrs. Inabinet's injuries were serious or that settlement offers had been received within policy limits.
Mrs. Cousins likewise acknowledges that numerous conferences were held with counsel for Insurer concerning the case. She denied that counsel for Insurer ever mentioned the possibility of an excess of judgment being rendered in the matter. Mrs. Cousins acknowledged, however, that she informed counsel for insurer that she did not wish to see the Inabinets recover anything at all, and that she was not worried about a judgment being rendered against her because the Inabinets could not recover anything from her.
Under the circumstances, we find neither negligence nor bad faith in Insurer's refusal to compromise. The facts attending the accident justified the decision to defend, especially in view of the Insured's version thereof and continual insistence upon freedom from fault. In addition, it is clear that the Insureds did not wish a settlement be made, and so informed counsel on more than one occasion.
We also find that under the circumstances, the trial court erroneously concluded Insurer was guilty of bad faith in failing to keep Insureds fully informed. We find the evidence preponderates clearly in favor of the determination that counsel did in fact keep Insureds fully informed of all aspects of the case, particularly including the possibility of Insureds' exposure to judgment for excess liability. Counsel so testified as did one disinterested witness. More importantly, a close analysis of Insureds' testimony discloses they were in fact fully informed despite their testimony to the contrary.
The judgment of the trial court is reversed, and judgment rendered herein rejecting the claims of plaintiffs and intervenors herein, at the cost of plaintiffs and intervenors.
Reversed and rendered.