498 So.2d 280 (1986)
SOUTHERN AMERICAN INSURANCE COMPANY,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY.
No. 85 CA 1170.
Court of Appeal of Louisiana, First Circuit.
November 12, 1986.
Writ Denied January 23, 1987.
*281 C. Michael Hill and John K. Hill, Jr., Lafayette, for plaintiff-appellant.
Owen M. Goudelocke, Lafayette, for defendant-appellee.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
The issue on appeal is whether any duty owed by a primary insurer to an excess insurer in the settlement of claims was breached under the facts before us. Because we find that the primary insurer acted neither arbitrarily nor in bad faith, we affirm the trial court's dismissal of the excess insurer's action.

FACTS
This suit arises from an automobile accident on October 22, 1979. Larry A. Fonseca was injured in the course of his employment with J. Ray McDermott Co., Inc. ("McDermott") when his automobile was struck from the rear by an automobile owned by the Sooner Pipe and Supply Corp. The parties to this suit, Hartford Casualty Insurance Co. ("Hartford") and Southern American Insurance Co. ("Southern American,") were, respectively, Sooner Pipe's primary and excess liability insurers. The liability limit of Hartford's primary policy was $250,000.00; Southern American's policy provided $5,000,000.00 in excess coverage.
After the accident, McDermott began making worker's compensation payments to its injured employee, Fonseca. Hartford, the primary insurer, learned soon after the accident that Fonseca had sustained a cervical and lumbar strain, and that the property damage was minimal. Fonseca filed suit against Hartford on January 14, 1980, and his attorney made a settlement demand of $200,000.00 in June. In October, Hartford learned that Fonseca had undergone a spinal fusion but it was unable to depose the surgeon, to determine the extent of injury, until late December.
In early January of 1981, Fonseca made a second settlement demand: the Hartford policy limit of $250,000.00, exclusive of McDermott's outstanding, but as yet unfiled, claim for worker's compensation payments. Because of information that Fonseca might have pre-existing injuries, and consequently, the need for further medical depositions, Hartford did not agree to this demand. Fonseca added the excess insurer, Southern American, as a defendant in February. On May 15, 1981, more than two months before discovery was to be completed, McDermott intervened in the lawsuit to assert its worker's compensation lien. After the extent and cause of Fonseca's injuries were evaluated, Hartford agreed to pay him the primary policy limits of $250,000.00 and Southern American agreed to pay approximately $25,600.00 (80% of the compensation lien) to McDermott. On April 6, 1982, a judgment of dismissal of all claims was entered. Southern American filed this suit on May 10, 1982, seeking reimbursement from Hartford for the amounts it paid to McDermott, and trial was held on February 6, 1985. By judgment signed on July 26, 1985 Southern American's action was dismissed.

DISCUSSION OF LAW
On appeal, Southern American (the excess insurer) argues that Hartford (the primary insurer) owed it a duty to settle Fonseca's claim timely and within the primary policy limits. It is Southern American's position that Hartford acted negligently and in legal bad faith in failing to settle with Fonseca before McDermott intervened, and that it suffered damages as a result. Specifically, Southern American argues that had Hartford settled before McDermott intervened, McDermott's claim for its worker's compensation payments would have prescribed, and Southern American would have escaped liability altogether.
*282 The initial issue, whether the primary insurer owes any settlement duty to an excess insurer, has not been directly addressed by the courts of this state.
Louisiana jurisprudence is clear that "the insurer is the champion of its insured's interests; that the interests of the insured are paramount to those of the insurer, and that the insurer may not gamble with the funds and resources of its policyholders." Cousins v. State Farm Mut. Auto. Ins. Co., 294 So.2d 272, 275 (La.App. 1st Cir.), writ refused, 296 So.2d 837 (La.1974) (emphasis added). Cousins described the duty of an insurer as follows: "[A]n insurer is not required to settle a claim within policy limits under penalty of absolute liability for any excess judgment rendered against the insured. Nevertheless, an insurer may be liable for an excess judgment against its insured where the insurer's refusal to settle within policy limits is found to be arbitrary or in bad faith." Id. (emphasis added). The following factors are considered in determining whether an insurer acted arbitrarily or in bad faith in failing to compromise:
(1) The probability of the insurer's liability; (2) the adequacy of the insurer's investigation of the claim; (3) the extent of damages recoverable in excess of policy coverage; (4) rejection of offers in settlement after trial; (5) the extent of the insured's exposure as compared to that of the insurer, and (6) the nondisclosure of relevant factors by the insured or insurer.
Id. As the Cousins opinion stated: "The question is always: `Did the insurer exercise that degree of skill, judgment, and consideration for the welfare of the insured which it, as a skilled professional defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit may have been expected to utilize?' "Id. (quoting Younger v. Lumbermens Mut. Cas. Co., 174 So.2d 672, 675 (La.App. 3d Cir.) writ refused, 247 La. 1086, 176 So.2d 145 (1965)).
We find persuasive the holdings of two federal cases that the primary insurer owes a duty to the excess carrier. Valentine v. Aetna Ins. Co., 564 F.2d 292 (9th Cir.1977); Utica Mut. Ins. Co. v. Coastal Marine, Inc., 578 F.Supp. 1376 (E.D.La.1984). As the Ninth Circuit Court of Appeal stated in Valentine: "If the insured purchases excess coverage, he in effect substitutes an excess insurer for himself. It follows that the excess insurer should assume the rights as well as the obligations of the insured in that position." Valentine, 564 F.2d at 297. The court continued to state: "The position of an excess insurer corresponds to that of the insured to the insurer when only one insurance policy exists." We note that the authors of one Louisiana insurance treatise disagree that such a duty exists in Louisiana. See 15 W. McKenzie & H.A. Johnson, Louisiana Civil Law Treatise: Insurance Law and Practice, § 221, at 405-407 (1986) (indicating that prior Louisiana caselaw, which denies an excess insurer any right to prevent the primary insurer from settling below primary limits, is inconsistent with such a duty).
However, we do not reach the issue of whether the primary insurer owes a settlement duty to the excess insurer. Even assuming such a duty exists, we cannot say that Southern American carried its burden of proving that Hartford acted arbitrarily or in bad faith in failing to accept the plaintiff's settlement offers sooner. For the same reason we do not discuss whether McDermott's claim would have been prescribed had Hartford settled before McDermott intervened.
Hartford received a report in March 1980, soon after Fonseca's lawsuit was filed, that he would be ready to return to work by May of that year. Through no fault of its own, and despite its good faith discovery efforts, Hartford did not become aware until October 1980 that Fonseca had undergone a spinal fusion, and until December 22, 1980 of the full extent of his injuries. It did not act unreasonably in failing to settle the lawsuit near the policy limit before that time. Two weeks after Hartford was apprised of Fonseca's injuries, *283 Fonseca's attorney raised his demand to Hartford's full policy limit, exclusive of the substantial worker's compensation lien which could be asserted by Fonseca's employer. However, Hartford learned soon thereafter of the possibility that Fonseca's injuries might have been, at least in part, pre-existing. As trial on the merits approached, Hartford attempted, unsuccessfully, to have Fonseca evaluated by a rehabilitation expert. The trial court permitted discovery, including depositions of Fonseca's treating physicians, to continue until July 24, 1981. McDermott intervened before discovery was completed, and the case was ultimately settled in June of 1981.
After examining the Cousins factors, we conclude that the evidence is insufficient to prove that Hartford failed to disclose any relevant factors to Southern American, or that Hartford acted arbitrarily or in bad faith in its investigation and ultimate settlement of the suit. Accordingly, we affirm the judgment of the trial court at appellant's cost.
AFFIRMED.