598 So.2d 670 (1992)
Amelia R. ROGERS, Plaintiff-Appellant,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Defendant-Appellee.
No. 90-1241.
Court of Appeal of Louisiana, Third Circuit.
April 16, 1992.
Rehearing Denied June 15, 1992.
*671 Raleigh Newman, Larry Roach, Lake Charles, for plaintiff-appellant.
Raggio, Cappel, Chozen & Berniard, Frederick L. Cappel, Tynes, Fraser, Roach & Morris, James R. Morris, Lake Charles, for defendant-appellee.
Before STOKER and YELVERTON, JJ., and CULPEPPER,[*] J. Pro Tem.
YELVERTON, Judge.
This case involves a claim for excess damages against an insurer for its alleged bad faith failure to settle claims against its insured and its insured's assignee. The trial judge determined that the defendant's actions were not so arbitrary and capricious as to amount to a breach of faith and ruled in favor of the insurer. We affirm.
The events which gave rise to the present suit began on October 29, 1983, when plaintiff, Amelia Rogers, suffered injury when a 1976 Mazda, owned by Renee M. Pappion and being driven by Renee's 18-year-old son Kevin Pappion, struck the rear of Rogers' Dodge Van. The Mazda was primarily insured by Prudential Property and Casualty Insurance Company (Prudential). The Prudential policy had a limit of $5,000. Mrs. Pappion owned another car that was insured under a policy issued by Government Employees Insurance Company (GEICO). GEICO thus provided excess coverage on the Mazda. The GEICO policy, like the Prudential policy, had a limit of $5,000. The combination of these two policies provided Pappion with a possible total of $10,000 worth of liability coverage.
In a letter dated August 2, 1984, Rogers' counsel, unaware of the GEICO policy, informed Prudential that Rogers' medical bill had escalated to over $11,000 and that settlement negotiations were in order. Prudential responded with a letter dated September 20, 1984, informing Rogers' counsel of the existence of the GEICO policy and of its potential for excess coverage. The letter further said that Prudential had "forwarded" Rogers' medical information to GEICO, and that it would be willing to "discuss settlement" upon GEICO's review of the information.
On October 8, 1984, Rogers' counsel, not having heard from either insurer, sent a letter addressed to Prudential by certified mail informing Prudential that Rogers had undergone back surgery for injuries. The letter suggested that the expenses for the surgery would easily put Rogers' claims in excess of the Prudential and GEICO combined policy limits. Rogers' counsel concluded this letter with the following:
Unless I receive the full limits of your coverage, and the full limits of the GEICO coverage within five (5) days from receipt of this letter, along with a copy of your policy indicating your limits, I will file suit and proceed to judgment in this case against the Pappions.
A copy of this letter was sent to GEICO by certified mail. The record shows that *672 GEICO received its copy on October 10, 1984.
Having received no word from either insurer within his five-day deadline, Rogers' counsel remained true to his word and on October 28, 1984, filed suit against all of the defendants.
In correspondence dated December 21, 1984, GEICO and Prudential made Rogers a combined settlement offer of the policy limits of both policies. Rogers rejected the offer. The case proceeded to trial. On August 7, 1985, judgment was rendered against Kevin Pappion for the principal sum of over $87,000.
By an instrument dated October 5, 1987, Kevin Pappion assigned to Rogers all claims, demands, and causes of action that he had against GEICO arising out of its failure to settle. On November 25, 1987, Rogers, as Pappion's assignee, brought the present suit against GEICO for its alleged bad faith refusal to accept compromise offers.

BAD FAITH
The issue essentially is whether GEICO's conduct amounted to a bad faith handling of the interests of its insured. The question is one of fact, a finding as to which we cannot overturn absent clear error.
GEICO initially argues that the right of an insured to sue its insurer, for a bad faith failure to accept settlement offers, is a right which cannot be validly assigned. We do not have to address this issue, as the dispute before us can be fairly decided on its merits.
The standard for holding an insurer liable for damage awards against its insureds was stated by this court in Hodge v. American Fidelity Fire Insurance Company, 486 So.2d 233, 236 (La.App. 3rd Cir.), writ denied, 489 So.2d 917 (La.1986).
In his written reasons for judgment dated August 7, 1984, the trial judge thoroughly and accurately set forth the law relative to the issue presented by the instant case. We therefore adopt his discussion as follows:
"The jurisprudence is clear that a liability insurer is not required to settle a claim against its insured even within the policy limits under the penalty of an absolute liability for any excess judgment which may be rendered against its insured. However, the insurer may be liable to its insured for the judgment in excess of policy limits for which the insured is cast where the insurer's failure to accept the settlement offer is not in good faith, or is arbitrary or capricious under the circumstances. See Champion v. Farm Bur. Ins. Co., 352 So2d 737 (La.App. 3rd Cir.1977)2; Trahan v. Central Mutual Ins. Co., 219 So2d 187 (La. App. 3rd Cir.1969)3; Younger v. Lumbermen's Mutual Casualty Co., 174 So2d 672 (La.App. 3rd Cir.1965)4; Wooten v. Central Mutual Insurance Co., 166 So2d 747 (La.App. 3rd Cir. 1964).
The insurer has a duty to protect its insured. In the case of Domangue v. Henry, 394 So2d 638 (La.App. 1st Cir. 1980)5, the court stated:
`Louisiana jurisprudence establishes that a duty is placed upon the insurer to consider the interest of the insured as paramount when an offer to settle is made. The insurer has a duty to act in good faith and to deal fairly when handling and settling claims in order to protect the insured from exposure to excess liability. See Holtzclaw v. Falco, [sic] 355 So2d 1279 (La.1978); Moskau v. Insurance Company of North America, 366 So2d 1004 (La.App. 1st Cir.1978); Comment, Duty of Insurer to Settle, 30 La.L.Rev. 622 (1970).'"
(footnotes omitted)
A determination as to what constitutes bad faith (or a lack of good faith) depends on the facts and circumstances of each case. Roberie v. Southern Farm Bureau Casualty Ins. Co., 250 La. 105, 194 So.2d 713, 716 (1967). In Hodge we adopted the First Circuit's six step bad faith analysis that was enunciated in Cousins v. State Farm Mutual Automobile Insurance Company, 294 So.2d 272, 275 (La.App. 1st Cir.1974), writ refused, 296 So.2d 837 (La.1974):

*673 "... [I]n determining liability of an insurer to its insured for refusal to accept a compromise offer the following factors should be considered: (1) The probability of the insured's liability; (2) the adequacy of the insurer's investigation of the claim; (3) the extent of damages recoverable in excess of policy coverage; (4) rejection of offers in settlement after trial; (5) the extent of the insured's exposure as compared to that of the insurer; and (6) the non-disclosure of relevant factors by the insured or insurer.
The court went on to say that the question is always: `Did the insurer exercise that degree of skill, judgment, and consideration for the welfare of the insured which it, as a skilled professional defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit may have been expected to utilize?' If it did, there is no problem; it is not liable. If it did not, then a court could easily describe its conduct as being negligent, or as not in accordance with the high duty of good faith which it owed to its insured."
Hodge at 236.
We can resolve the present dispute by looking to the sixth factor of the Cousins test: "the nondisclosure of relevant factors by the insured or insurer." In the present dispute, the Pappions never filed a claim against GEICO, nor did they even contact GEICO. In fact, GEICO never received any direct notice of any kind from either the Pappions or Rogers.
In all, GEICO received only two communications concerning the automobile accident. Neither of these communications came directly from the insureds or their assigns. Less than one month from receiving these indirect communications, Rogers' attorney placed GEICO under an arbitrary five day settlement deadline. This meant that GEICO had a period of time limited between September 20 and October 17 to investigate and evaluate a claim arising from an automobile accident which occurred nearly one year earlier.
Applying the sixth factor of the Cousins approach, the insured's efforts to contact and inform GEICO of the accident were inadequate, amounting to a nondisclosure of a relevant factor (the relevant factor being the claim itself). Without adequate and timely notice from the Pappions, it is unreasonable to hold GEICO accountable for failing to conform to the other Cousins requirements within the time allowed. In other words, the plaintiff (as assignee of the Pappions), under these circumstances, did not give GEICO enough time to act in good faith.
In a similar case the U.S. District Court for the Western District of Louisiana held that when determining if an insurer is liable for an excess judgment, the plaintiff must prove that the insurer did not settle the claim when under the circumstances it "could and should have done so." Bailey v. Hardware Mutual Casualty Company, 322 F.Supp. 387 (W.D.La.1969), affirmed, 439 F.2d 763 (5th Cir.1971). We find this to be an accurate statement of the law as it applies in Louisiana, and we hold that under the circumstances of this case GEICO's actions did not amount to a breach of faith. The trial judge did not err.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.