| THIBODEAUX, Judge.
The plaintiffs, Odelia Leger Smith and the Succession of Cleven Smith, filed suit against their homeowner insurer, Audubon Insurance Company, after they were exposed to an excess judgment due to Audubon’s actions in handling a claim against them. The Smiths alleged that Audubon acted in bad faith in defending their interests.
|2The trial court rendered judgment in favor of Audubon. The Smiths appeal.
We reverse, finding that the trial court erroneously concluded that the defendant, Audubon, did not act in bad faith. Additionally, we award to the plaintiffs a penalty of ten (10%) percent on the excess judgment and attorney’s fees in the amount of $12,-500.00.
I.

ISSUES

The primary issue is whether the homeowner insurer, Audubon Insurance Company, acted negligently and in bad faith in handling a claim against its insureds which resulted in an excess judgment against the insureds.
II.

FACTS

Cleven Smith and his wife, Odelia Leger Smith, had a homeowner’s insurance policy with defendant, Audubon Insurance Company, covering their home in Krotz Springs, Louisiana. The policy had a limit of $25,-000.00 for bodily injury coverage. On May 12, 1987, Smith asked his grandson, Kenneth Smith, to help him repair his riding lawn mower. When Kenneth attempted to start the lawn mower, the gas in the tank ignited. Smith, who was holding the fuel tank, either dropped the tank or threw it on Kenneth. Kenneth received severe burns on his back, chest, arms and head covering approximately 30% of his body.
Smith notified Audubon of the accident shortly after it occurred. On May 19, 1987, Audubon sent Donald Stewart of Pat Brown’s claim service to investigate the claim. Stewart subsequently submitted a report to Audubon Igrecommending that Audubon establish reserves of $7,500.00 for bodily injury and $2,000.00 for medical payments.
Jean Payne, an adjuster for Audubon, received Stewart’s report and subsequently established a $25,000.00 Bodily Injury Loss Reserve and a $2,000.00 Medical Pay Loss Reserve. On July 7,1987, Payne received an updated report from Stewart, including documentation of lost wages and medical expenses and a report from the treating physician detailing the extent of Kenneth’s injuries. The report also included Kenneth’s offer to settle for his medical expenses, total-ling $14,665.20.
Kenneth subsequently obtained an attorney, who attempted to settle the claim with Audubon. Kenneth’s attorney offered to settle the claim for the limits of the policy. Audubon did not respond to this settlement offer.
On January 19, 1988, Kenneth’s attorney filed suit, alleging damages of $157,000.00. Terry Rowe, Audubon’s attorney, notified Payne that Audubon may be exposed to potential liability. Subsequently, on April 29, 1988, Kenneth’s attorney sent Audubon another letter offering to settle the claim for the policy limits. Payne refused to give her attorney any authority to settle the claim.
On January 26, 1989, Kenneth’s attorney advised Audubon’s counsel that Mr. Cleven Smith, the only witness to the accident, was dying of cancer and would be unable to attend trial, scheduled for February 16, 1989.
On February 3, 1989, Audubon’s attorney notified Payne that plaintiff was still willing to accept less than the policy limits. Payne *14 still refused to authorize settlement. A trial of the matter was held on February 16,1989. The jury assessed Cleven Smith with 60% fault in causing the accident, and Kenneth Smith with the remaining 40%. The jury then returned a verdict in favor of plaintiff, awarding damages of $92,272.70. After reducing the judgment for plaintiffs fault and adding hjudicial interest, Mr. and Mrs. eleven Smith were bound by a $30,000.00 excess judgment.
Audubon paid the limits of the policy to Kenneth Smith. Although an attorney for Audubon informed Mr. and Mrs. Smith of their right to appeal, he informed them that Audubon did not find reasonable grounds for appeal and would not be appealing its portion of the judgment. Thus, the judgment was not appealed by either Audubon or Mr. and Mrs. Cleven Smith and it therefore became final.
On February 15, 1990, Mrs. Cleven Smith, individually and as the executrix of her husband’s succession, filed suit against Audubon, seeking damages, attorney’s fees, penalties and costs for Audubon’s negligent failure to settle the claim. On September 20,1993, the parties tried the matter before a jury. However, the jury was unable to reach a verdict and the judge declared a mistrial. The parties then agreed to submit the matter to the trial judge. The trial court ruled in favor of defendant, but did not issue any written or oral reasons for judgment.
III.

LAW AND DISCUSSION

A. Applicability Of La.R.S. 22:1220
Plaintiffs allege that defendant violated La. R.S. 22:1220, which imposes an affirmative duty on the insurer to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant or both. Plaintiffs also argue that penalties and attorney’s fees, which are authorized under this section, should be assessed.
La.R.S. 22:1220, effective July 6, 1990, is substantive and may not be applied retroactively; the date of the accident controls the application of this statute. IsRusch v. Cook, 619 So.2d 122 (La.App. 1 Cir.1993), unit denied, 625 So.2d 1043 (La.1993). However, the Rusch court also explained that:
Prior to the enactment of this statute, it was the jurisprudence of this state that the insurer owed to its insured a duty to act in good faith and to deal fairly when settling claims. Holtzclaw v. Falco, Inc., 355 So.2d 1279 (La.1978 [1977]) (on rehearing). Thus, the first sentence of La.R.S. 22:1220, which provides that the insurer owes to his insured a duty of good faith and fair dealing, simply codified existing law. General Accident Insurance Company v. Watson, 610 So.2d 881 (La.App. 1st Cir.1992), writ denied, 612 So.2d 64 (La.1993). However, prior to the enactment of La.R.S. 22:1220, the insurer owed no such duties to a third-party claimant seeking recovery under a liability policy. In Bellah v. State Farm Fire and Casualty Ins. Co., 546 So.2d 601 (La.App. 3d Cir.1989), the court made it clear that the insurer’s duty to settle runs only in favor of the insured, not an injured third-party claimant. Further, it was held that because a claimant is not an “insured” under an insurance policy, he is not entitled to an award of penalties and attorney’s fees under La.R.S. 22:658, which requires an insurer to pay claims within 60 days of a satisfactory proof of loss. Williams v. State Farm Mutual Automobile Ins. Co., 517 So.2d 849 (La.App. 3d Cir.1987). In summary, before the enactment of this statute, insurance companies had no duties to third-party claimants who were not named insureds under the insurance contract. See Hernandez v. Continental Casualty Insurance Co., 615 So.2d [484] at 491 (Plotkin, J. Dissenting). (Footnote omitted).
Therefore, since the present case involves a suit between an insurer and an insured, we need not consider the applicability of La.R.S. 22:1220. A cause of action for an insured against his insurer for dealing in bad faith when handling a claim does not rest solely on this statute.
B. Audubon’s Negligence
The evidence, plaintiffs assert, showed that Audubon negligently failed to *15 settle the claim, listing eight separate instances of negligence as follows:
1. Failure to inform Mr. or Mrs. Cleven Smith of numerous offers to settle the claimant’s lawsuit within their policy limits;
2. Failure to negotiate fairly with the claimant, considering the unsophisticated and limited intelligence of the insured and Audubon’s superior knowledge to the potential excess exposure faced by the insureds;
|63. Failure to respond to numerous settlement offers made by the claimant;
4. Failure to send the insured an excess letter when Audubon knew or should have known of the potential for excess exposure;
5. Failure to keep the insured informed of the probability of excess exposure as the case progressed;
6. Failure to properly prepare the case for trial, knowing the factors impacting liability;
7. Failure to properly evaluate the potential for excess exposure to the insured and then failing to inform them of these factors, in light of the insurer’s fiduciary obligation to their insured; and
8. Failure to perfect an appeal so as to protect the interest of their insured.
The insurer has a duty to consider the insured’s interests as paramount when an offer to settle is made. Cormier v. Aetna Cas. & Sur. Co., 614 So.2d 1359 (La.App. 3 Cir.1993). The insurer’s duty is to act in good faith and to deal fairly when handling and settling claims in order to protect the insured from exposure to excess liability. Fertitta v. Allstate Ins. Co., 439 So.2d 531 (La.App. 1 Cir.1983), affirmed, 462 So.2d 159 (La.1985).
In Hodge v. American Fidelity Fire Insurance Co., 486 So.2d 233, 236 (La.App. 3 Cir.), writ denied, 489 So.2d 917 (La.1986), this court stated:
“The court in the case of Cousins v. State Farm Mutual Automobile Insurance Company, 294 So.2d 272 (La.App. 1st Cir. 1974), stated that in determining liability of an insurer to its insured for refusal to accept a compromise offer the following factors should be considered:
(1) The probability of the insured’s liability; (2) the adequacy of the insurer’s investigation of the claim; (3) the extent of damages recoverable in excess of policy coverage; (4) rejection of offers in settlement after trial; (5) the extent of the insured’s exposure as compared to that of the insurer; and (6) the non-disclosure of relevant factors by the insured or insurer. The court went on to say that the question is always: ‘Did the insurer exercise that degree of skill, judgment, and consideration 17for the welfare of the insured which it, as a skilled professional defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit may have been expected to utilize?’ If it did, there is no problem; it is not liable. If it did not, then a court could easily describe its conduct as being negligent, or as not in accordance with the high duty of good faith which it owed to its insured.”
A determination of what constitutes bad faith or a lack of good faith depends on the facts and circumstances of each case. Rogers v. Government Employees Ins. Co., 598 So.2d 670 (La.App. 3 Cir.1992), writ denied, 605 So.2d 1364 (La.1992).
In the initial statement of Kenneth Smith taken by Don Stewart, Smith stated that while he was putting out the fire with a sack, the motor must have toppled over and gas flew on him. He further stated that he must have knocked the gas tank down out of his grandfather’s hands when gas flew on him. In Cleven Smith’s initial statement to Don Stewart, he stated that he was a few feet away from the fire, but had also been burned. His son, Alfred, extinguished the fire after it began.
However, at deposition Kenneth Smith stated that after the fire started, he began to take off his shirt so that he could use it to put out the fire. His grandfather then instructed him to use a feed sack to put out the fire so he wouldn’t ruin his shirt. As he attempted to extinguish with the burlap sack, he either knocked the tank out of his grandfather’s hand or his grandfather dropped it.
Although Cleven Smith’s deposition was not made a part of the record, Terry Rowe *16 sent a letter to Jean Payne on March 24, 1988, summarizing the deposition. Rowe stated that at the deposition Cleven Smith testified that while Kenneth Smith attempted to put out the fire with a sack, Cleven Smith’s hands and shirt caught on fire. Rowe’s letter then states:
At this time, Cleven Smith became panicked and does not remember exactly what he did next. He either dropped the fuel tank and gasoline splashed up on Kenneth Smith, which caught |8fire, or Cleven Smith actually threw the gas tank away from him, splashing gasoline on his grandson, which then caught fire.
Thus, Audubon was informed that the facts were not exactly as established by Stewart’s initial investigation.
Cleven Smith was too ill to testify at the first trial. He died on July 29,1989, approximately six months after the first trial. In the present case, Kenneth Smith testified that at first he thought that he had knocked the gas tank out of Cleven Smith’s hands, causing it to spill gasoline on himself and subsequently causing his injury. However, at the first trial he stated that he could not have knocked the gas tank out of his grandfather’s hands. He was in the wrong position to have knocked the gas tank, and that if he had knocked anything it would have been the hose connected to the tank, and the gas would have spilled in front of him and not behind him. He testified that although his deposition testimony indicated he knocked the tank out of his grandfather’s hands, until he demonstrated what happened at trial, he didn’t realize that he couldn’t have knocked the tank out of his grandfather’s hands.
Payne testified that she believed that there was no liability on the part of the insured based on the statements of Cleven Smith and Kenneth Smith taken by Don Stewart. When asked whether she changed her position after the depositions of Cleven and Kenneth, she stated “I never found out the situation was different.” She later admitted that her attorneys notified her of the change in Cleven and Kenneth’s version of events at deposition. However, she stated that even assuming that the version of events from the depositions was correct, it would not have made a difference in her assessment of liability; she believed that this version of events was implausible. She stated that she did not believe Cleven Smith would have continued to hold on to the gas tank after the fire started while Kenneth Smith attempted to put out the fire with a burlap sack. She also testified that she did not change her position | ¡^because her attorney informed her that it was a defensible claim. She stated that her attorneys continued to inform her that it was a defensible claim up until the time of trial.
However, on July 16, 1987, Payne prepared a settlement offer which included 75% of claimant’s hospital bill, 100% of claimant’s doctor bill and $1,000.00 directly to Kenneth Smith. She stated that although she believed that there was no liability on the part of their insured, she wanted to make an offer to claimant anyway. However, she never tendered the offer because the hospital refused to agree to a reduction of its bill. This offer was approximately $8,500.00 less than Kenneth Smith’s offer to settle for his medical expenses.
After the judgment was rendered against them, Payne consulted her attorney about an appeal and was told that it would not be successful. She stated that she then informed Cleven Smith and his wife of their right to appeal through her attorneys, but Audubon did not file an appeal on their behalf because the Smiths did not request that they do so.
All of Audubon’s attorneys, Preston Cloyd, Terry Rowe, and Kenneth Oliver, believed that Cleven Smith was not at fault in causing the injuries to Kenneth and, therefore, did not recommend settlement, although Rowe did communicate to Payne that “[tjhere may be some potential liability on the insured in as much as strict liability is still in the books ...” However, he predicated his evaluation of a lack of liability on “victim fault.” Cloyd testified that he did not have any evidence to show that Cleven Smith was negligent in causing the accident except the testimony of Kenneth Smith. However, he also knew that Kenneth’s testimony would not be rebutted because Cleven was too ill to testify and his deposition for trial purposes was not taken.
*17 liplt is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In the present case, we find that it was not reasonable for the trial court to rely on the defendant’s representations that there was no liability on the part of its insured. Audubon clearly was aware of the fact that both de-ven Smith and Kenneth Smith had some part in causing the accident. They did not have a reasonable belief that Kenneth Smith was 100% at fault. Thus, Audubon’s actions in failing to make settlement offers when its insured was potentially exposed to a large excess judgment were also unreasonable. Further, Jean Payne’s actions in failing to offer a settlement for the amount of Kenneth’s medical expenses were also unreasonable, especially considering the fact that she would have made a settlement offer for just $3,500.00 less than that amount. We find the trial court committed manifest error in failing to find that the insurer acted in bad faith. Id.; Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). Thus, we reverse the trial court’s judgment and find that defendant is liable for the amount of the excess judgment rendered against plaintiffs.
C. Penalties And Attorney’s Fees
Where an insurer is guilty of bad faith in protecting the interests of its insured and such bad faith results, as here, in the rendition of an excess judgment, and where the insured has had to employ an attorney to protect his interests, an award of attorney’s fees is proper. Maryland Casualty Company v. Dixie Insurance Company, 622 So.2d 698 (La.App. 4 Cir.1993), writ denied, 629 So.2d 1138 (La.1993)._[nAlthough Maryland Casualty v. Dixie did not cite a statutory basis as justification, we feel that La.R.S. 22:658(B)(1), as it existed at the time of the accident, provides an ample basis for such an award. We feel an award of $12,500.00 adequately compensates the Smiths’ attorney for the quality and amount of work performed at both the trial and appellate levels.
Moreover, because Audubon’s conduct was arbitrary and capricious, a penalty of ten (10%) percent damages on the total amount of the excess judgment is appropriate in addition to attorney’s fees. See Pa-rich v. State Farm Mutual Automobile Insurance Company, 919 F.2d 906, 919 (5 Cir. 1990).
IV.

DECREE

The judgment of the trial court is reversed. Defendant is ordered to pay the amount of the excess judgment rendered against plaintiffs in the claim of Kenneth Smith. Interest is assessed from the date of judicial demand.
Additionally, Audubon Insurance Company is ordered to pay a ten (10%) percent penalty on the total amount of the excess judgment plus attorney’s fees in the amount of $12,-500.00. Interest on these amounts is awarded from the date of this judgment.
All costs are assessed to Audubon Insurance Company.
REVERSED AND RENDERED.